**STATE of Alaska, Appellant,**

v.

**Sharilynn ESMAILKA, Appellee.**

No. A–6674.

Court of Appeals of Alaska.

July 24, 1998.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Daniel Lowery, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellee.

Before COATS, C.J., and
MANNHEIMER and STEWART, JJ.

### OPINION

MANNHEIMER, Judge.

The possession or consumption of alcoholic beverages by a person under the age of 21 is a "violation", an offense punishable only by a fine (a fine of not less than $100).[1] However, a person under the age of 21 who possesses or consumes alcohol faces a more substantial civil penalty: the legislature has authorized the Department of Public Safety to administratively revoke the driver's license of a person under the age of 21 (and at least 14) who possesses or consumes alcohol.[2]

The defendant in this case, Sharilynn Esmailka, is a 15–year–old who was arrested for consuming alcoholic beverages. While Esmailka was awaiting her criminal trial, the Department of Public Safety notified her that, because she had possessed or consumed alcoholic beverages, the Department intended to take administrative action against her driver's license (or, more precisely, the Department intended to enter an administrative order prohibiting Esmailka from obtaining a driver's license.) In this same notice, the Department informed Esmailka that she was entitled to a hearing to dispute the allegation. Apparently, however, Esmailka chose not to request a hearing, so the Department proceeded with its planned administrative action.

After the Department administratively revoked her privilege to drive, Esmailka asked the district court to dismiss her criminal case. Esmailka contended that the Department of Public Safety's action constituted a "punishment" for purposes of the double jeopardy clauses of the federal and state constitutions.[3] Based on this premise (that administrative revocation of a driver's license is a "punishment"), Esmailka argued that she had already been punished once for her drinking, and that any further punishment that might be imposed in the criminal case would constitute an unlawful second punishment for the same offense.

The district court agreed with Esmailka and dismissed the criminal charge. The State now appeals.

The task in this appeal is to sort out the various legal doctrines that collide here. Our analysis begins with the United States Supreme Court's decision in *United States v. Halper.*[4]

In *Halper*, the Supreme Court declared that an administrative penalty—that is, an ostensibly civil penalty—could constitute a "punishment" under the double jeopardy clause if the penalty served either a retributive or a deterrent purpose.[5] The *Halper* decision led to wide-spread litigation concerning whether a state could constitutionally prosecute a driver for violating a traffic law

---

1. AS 4.16.050.

2. AS 28.15.183–184.

3. United States Constitution, Fifth and Fourteenth Amendments; Alaska Constitution, Article I, Section 9.

4. 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

5. 490 U.S. at 448–49, 109 S.Ct. at 1901–02.

after the state had administratively revoked the person's driver's license based on the same conduct. In *State v. Zerkel* [6], we confronted such litigation; we held that administrative revocation of a license would not constitute "punishment" for double jeopardy purposes "so long as the revocation ... is based on conduct that bears a direct relation to the government's regulatory goals or to the proper administration and enforcement of the regulatory scheme." [7]

Two years later, in *Rexford v. State* [8], a minor who was charged with consuming alcohol used this passage from *Zerkel* to attack the statutes in Title 28 that authorize the Department of Public Safety to administratively revoke a minor's driver's license if the minor consumes or possesses alcoholic beverages. Rexford asserted that minors, just like adults, could drink alcoholic beverages from time to time and still be safe drivers. Rexford conceded that there would be a rational basis for revoking the driver's license of a minor who drank while in control of a vehicle, but Rexford argued that there was no rational basis for the legislature's decision to revoke the driver's license of all minors caught drinking under any circumstances. Thus, Rexford contended, the legislature exceeded its constitutional powers when it enacted AS 28.15.183–184.

For these same reasons, Rexford contended that the State had "punished" him (within the meaning of the double jeopardy clause) when the Department of Public Safety administratively revoked his privilege to drive. According to Rexford, the State's revocation of his license amounted to "punishment" for double jeopardy purposes because it failed the test set forth in *Zerkel:* the basis for the revocation (a minor's possession or consumption of alcoholic beverages) did not bear "a direct relation to the government's regulatory goals".

The trial judge in *Rexford* rejected the minor's arguments because she found, based on published studies of teenage driving behavior, that there was a significant link between teenage drinking and teenagers' likelihood of engaging in dangerous driving.[9] On appeal, Rexford did not attempt to rebut these studies; indeed, he did not even address them.[10] We affirmed Rexford's conviction based on the district court's findings.[11]

We now reach the present day, and the present case. The State argues that *Rexford* controls Esmailka's case and that, under *Rexford,* the district court should not have dismissed the criminal prosecution against Esmailka. Esmailka, for her part, argues that *Rexford* was wrongly decided. She asserts that the studies underlying *Rexford* are outdated and flawed, and that there really is no rational relationship between a minor's willingness to engage in under-age drinking and the same minor's ability to safely drive motor vehicles.

Regardless of what the statistics show, Esmailka's argument ultimately rests on the "direct relation" test announced in *Zerkel*—the concept that an administrative penalty is not a "punishment" if it bears a rational relationship to the state's regulatory aims. This *Zerkel* test was an attempt to clarify the limits of the new double jeopardy doctrine announced by the United States Supreme Court in *Halper:* the doctrine that an administrative penalty would be deemed a "punishment" if it served a deterrent purpose. But the Supreme Court has now recognized that *Halper*'s "deterrent purpose" double jeopardy analysis was bad law.

In *Hudson v. United States* [12], the Court declared that "*Halper*'s deviation from long-standing double jeopardy principles was ill[-]considered".[13] The Court concluded that "subsequent cases have demonstrated [that] *Halper*'s test for determining whether a particular sanction is 'punitive' ... has proved

**6.** 900 P.2d 744 (Alaska App.1995).

**7.** 900 P.2d at 757.

**8.** 941 P.2d 906 (Alaska App.1997).

**9.** *Rexford,* 941 P.2d at 907.

**10.** *Id.*

**11.** *Id.*

**12.** 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).

**13.** 522 U.S. at ——, 118 S.Ct. at 494.

unworkable[, since] all civil penalties have some deterrent effect." [14]   Disavowing *Halper*, the Court returned to its pre-*Halper* analysis of civil penalties—the analysis exemplified in *United States v. Ward.* [15]

Under the double jeopardy analysis employed in *Ward* and *Hudson* [16], it appears that the federal double jeopardy clause would apply to few (if any) administrative revocations of driver's licenses.  This sea change in federal double jeopardy law suggests that we should carefully scrutinize any proposal to interpret *Zerkel* in a way that expands double jeopardy analysis past its current federal boundaries.  As explained above, *Zerkel* was an attempt to deal with the novel federal double jeopardy analysis announced in *Halper*.  Now that the Supreme Court has repudiated *Halper*, it would be ironic if *Zerkel* were interpreted to call for a different, more intrusive double jeopardy analysis than is currently required under federal law.

Ultimately, the task at the heart of Esmailka's appeal is to determine what legal consequences flow from Esmailka's primary claim—her contention that the Alaska Legislature had no rational basis for authorizing the Department of Public Safety to revoke the driving privileges of minors who possess or consume alcohol (in circumstances unconnected to driving or control of motor vehicles).  Phrased another way: if Esmailka is correct when she asserts that there is no demonstrable relationship between under-age drinking and dangerous driving, what is her remedy?

Upon reflection, we believe that we adopted a mistaken approach to this issue when we confronted it before in *Rexford*.  In *Rexford*, we implicitly adopted the legal position argued by the parties—the position that, if there was no rational relation between under-age possession or consumption of alcohol and dangerous driving, then revocation of a minor's driver's license for possessing or consuming alcohol would constitute a "punishment" for double jeopardy purposes, thus

barring any subsequent criminal prosecution for an offense based on the same conduct.  This approach does not make sense.

We first take one mental step backward, to put the problem in perspective.  No one questions the authority of the legislature to prohibit and punish under-age possession or consumption of alcoholic beverages.  The question is whether the legislature can lawfully impose a loss of driving privileges as an administrative penalty for this conduct.

Let us assume for purposes of argument that, as Esmailka contends, the legislature has no rational basis for revoking the driving privilege of minors who possess or consume alcohol.  Esmailka asks us to uphold this irrational license revocation, deem it a "punishment" for double jeopardy purposes, and then prohibit the State from prosecuting Esmailka for a concededly valid criminal offense—under-age possession or consumption of alcohol.  This does not follow.  If, as Esmailka argues, the legislature's action lacks any rational basis—if the legislature violated the guarantee of substantive due process or equal protection when it enacted AS 28.15.183–184 and authorized administrative revocation of Esmailka's privilege to drive—then Esmailka's remedy would be to invalidate the license revocation, not uphold the license revocation and invalidate the criminal prosecution.

We faced a similar contention in *Aaron v. Ketchikan.* [17]  The defendant in *Aaron* refused to submit to a breath test when he was arrested for driving while intoxicated.  Based on his refusal, Aaron suffered administrative revocation of his driver's license, and he was also charged with the criminal offense of refusing the breath test.  Aaron argued that, because of certain procedural infirmities, he had been denied due process during the Department of Public Safety's administrative proceedings, and thus the administrative revocation of his license had been unlawful.  Aaron then asserted that, because he had been subjected to an unlawful license

14.  *Id.*

15.  448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641–42, 65 L.Ed.2d 742 (1980).

16.  *See Hudson*, 522 U.S. at ———————, 118 S.Ct. at 495–96.

17.  927 P.2d 335, 337 n. 2 (Alaska App.1996).

revocation, the district court should have dismissed the DWI prosecution. We rejected this contention:

> [T]he procedural infirmity in the Department's administrative actions would not affect the question of whether the administrative loss of [a] driver's license constitute[s] a "punishment" for double jeopardy purposes. [The aggrieved person's] remedy would be to seek re-opening or review of the Department's administrative action.

*Aaron,* 927 P.2d at 337 n. 2.

Applying this reasoning to Esmailka's case, we conclude that even if the legislature exceeded its constitutional powers when it authorized the Department of Public Safety to administratively revoke the driving privileges of minors who possess or consume alcoholic beverages, Esmailka's remedy would be to seek judicial review and invalidation of the legislature's action. (We note that such litigation is currently before the Alaska Supreme Court; the case is *State v. Quinn,* File No. S-8003.) The asserted unconstitutionality of the legislature's action (and the asserted unlawfulness of the administrative revocation of Esmailka's privilege to drive motor vehicles) should not immunize Esmailka from the criminal consequences of her illegal use of alcoholic beverages.

For these reasons, we disavow our suggestion in *Rexford* that an irrational or otherwise unconstitutional administrative revocation of a person's driver's license will immunize that person from prosecution for the underlying criminal conduct. If the license revocation is unconstitutional, the aggrieved person's remedy is to attack the license revocation.

It follows that we need not resolve Esmailka's contention that the statistical studies summarized in *Rexford* are flawed. Regardless of what the statistics show, and regardless of whether there was a rational basis for the legislature's enactment of AS 28.15.183–184, the criminal prosecution against Esmailka for under-age consumption of alcohol should and can proceed.

The judgement of the district court is REVERSED. This case is remanded to the district court for further proceedings on the criminal complaint filed against Esmailka.