STATE of Alaska, Petitioner,

v.

**Candice AULIYE, Respondent.**

No. A–8084.

Court of Appeals of Alaska.

Oct. 25, 2002.

---

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Petitioner.

Margi A. Mock and Wally Tetlow, Assistant Public Defenders, and Barbara K. Brink, Public Defender, Anchorage, for Respondent.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Candice Auliye is charged with violating AS 04.16.050(a)—consuming or possessing alcoholic beverages while younger than twenty-one years. Superior Court Judge Ben J. Esch concluded that the potential penalty for this offense is sufficiently severe that Auliye is entitled to a jury trial and to counsel at public expense if she is unable to afford private counsel. The State has petitioned us to review this ruling.

Any person found guilty of violating AS 04.16.050 must be placed on "probation" until they are twenty-one years old (or for one year, whichever is longer). Although the legislature has chosen a familiar word to describe this penalty, it is different from the probation traditionally imposed under Alaska law. Unlike ordinary probation, neither the sentencing judge nor the defendant has any choice in the matter: the judge is obliged to place the defendant on this lengthy probation, and the defendant has no right to refuse. In other words, the probation is automatic.

Moreover, AS 04.16.050 expressly provides that the terms of the defendant's probation can include custodial in-patient treatment and community work service. Since the de-

fendant has no right to refuse the probation, the defendant must comply with these conditions, and the court can enforce compliance through its contempt power.

■ In previous cases, we have held that custodial in-patient treatment and community work service are penalties that trigger the right to trial by jury and the right to counsel at public expense. We therefore conclude that the penalties for violating AS 04.16.050 are sufficiently severe that a defendant is entitled to trial by jury and, if the defendant is indigent, to counsel at public expense.

*The history of AS 04.16.050 in its prior forms, and the legislature's initial attempt to "de-criminalize" this offense—that is, reduce the penalties to a level where defendants would no longer have the right to trial by jury and, if indigent, the right to counsel at public expense*

Until 1995, violation of AS 04.16.050 was a class A misdemeanor.[1] This meant that defendants between the ages of 18 and 21 (that is, youths who were too old to be treated under the juvenile system) faced up to 1 year's imprisonment if convicted.[2] The legislature discovered that, in practice, this penalty did more to deter enforcement of the law than to deter minors from violating the law. Many law enforcement officers were reluctant to bring criminal charges against a youth for conduct that was often viewed as a rite of passage, especially when conviction would jeopardize the youth's future military and employment opportunities.[3]

At the same time, the legislature received complaints from parents of youths younger than 18—that is, youths who were referred to the juvenile justice system for underage drinking. According to these parents, juve-

nile authorities had their hands full with more serious teenage crime, so the authorities gave low priority to teenage drinking. Offenders often received no greater punishment than a scolding letter which arrived months after the offense.[4]

In 1994 and 1995, the legislature tried an alternate approach. Instead of relying on prison terms to deter teenage drinking, the legislature attacked the problem by requiring the Department of Public Safety to administratively revoke the driver's license of any minor (older than 13) who consumed or possessed alcoholic beverages, regardless of whether the minor's consumption or possession of alcoholic beverages was connected to the minor's operation or control of a motor vehicle.[5] Having adopted this license-revocation approach, the legislature amended AS 04.16.050 to reduce the offense from a class A misdemeanor to a "violation" whose sole penalty was a fine of not less than $100.[6] In another section of the same session law, the legislature amended the juvenile delinquency laws to exempt underage drinkers from juvenile jurisdiction.[7] That is, all such offenders (no matter what their age) would be prosecuted in district court and, if convicted, they would face only a fine and administrative revocation of their driver's license (rather than the institutionalization or involuntary placement in a foster home that were possible dispositions in a juvenile delinquency proceeding).[8]

One of the perceived benefits of this new approach was that the state would not have to spend so much money to prosecute youths for underage drinking. The legislature anticipated that, because of these changes in the penalty structure, youths charged with

---

1. *See* AS 04.16.050 & AS 04.16.180 as enacted in SLA 1980, ch. 131, § 3, and as amended by SLA 1983, ch. 109, § 8.

2. *See* AS 12.55.135(a).

3. *See* Minutes of the Senate Finance Committee for March 22, 1995, Minutes of the House Judiciary Committee for April 21, 1995, and Minutes of the House Finance Committee for May 3, 1995, all discussing SB 46.

4. *See* Minutes of the Senate Finance Committee for March 22, 1995, discussing SB 46.

5. *See* AS 28.15.183–184 (as enacted in SLA 1994, ch. 71, § 1).

6. *See* SLA 1995, ch. 81, § 1.

7. *See* former AS 47.10.010(b)(5) (as enacted in SLA 1995, ch. 81, § 5), now recodified as AS 47.12.030(b)(5).

8. *See* former AS 47.10.080(b), now recodified as AS 47.12.120(b).

underage drinking would no longer be entitled to court-appointed counsel or to trial by jury.

In a pair of decisions issued in 1970 and 1971, *Baker v. Fairbanks* and *Alexander v. Anchorage*, the Alaska Supreme Court ruled that the Alaska Constitution guarantees defendants the right to trial by jury and (if indigent) the right to court-appointed counsel if they are charged with an offense that carries a potential penalty of (1) imprisonment, (2) the loss of valuable license (*e.g.*, a driver's license), or (3) a fine so large as to connote criminality.[9] And in *R.L.R. v. State*, the supreme court held that juvenile offenders facing similar consequences also have the right to trial by jury.[10]

As just explained, the legislature's amendments of 1994 and 1995 removed the offense of underage drinking from the juvenile delinquency laws and reduced the punishment for this offense to a small fine. Although youths who consumed or possessed alcoholic beverages would suffer revocation of their driver's license, the revocation would be imposed by the Department of Public Safety in an administrative proceeding, not by the district court in a sentencing proceeding. In fact, the license revocation could occur even though the youth was never prosecuted for violating AS 04.16.050.[11] The legislature hoped that, with this new penalty structure, the offense of "minor consuming" would not require a jury trial or court-appointed counsel under the *Baker–Alexander–R.L.R.* test.

But in *State v. Niedermeyer*, the Alaska Supreme Court ruled that the "administrative" license revocation enacted by the legislature was in fact punitive (because the statute required revocation of the minor's license even when there was no proof that the minor's consumption or possession of alcohol had any connection to the operation of

a motor vehicle).[12] Because the license revocation was punitive, the court ruled, the State could not impose the license revocation unless it accorded the minor "[all] the safeguards of criminal process that normally apply to criminal punishment".[13]

*Baker v. Fairbanks* and *Alexander v. Anchorage* hold that when a defendant faces the potential loss of a driver's license, two of the defendant's prime procedural safeguards are the right to trial by jury and the right to counsel. Thus, after *Niedermeyer*, the State was obliged to give minors a jury trial, and give indigent minors court-appointed counsel, if the State wished to revoke a minor's driver's license based on the minor's consumption or possession of alcoholic beverages.

*The legislature's response to Niedermeyer: the rewriting of AS 04.16.050*

After the supreme court's decision in *Niedermeyer*, the legislature was faced with a choice.

One option was to continue the policy of attempting to deter teenage drinking by revoking the driver's licenses of all minors who consumed or possessed alcoholic beverages. To pursue this policy, the legislature would simply redraw the penalty provisions of AS 04.16.050 so that license revocation was again a direct punishment for this offense. With this change in the statute, the threat of license revocation would remain a deterrent to teenage drinking, but the legislature would have to abandon their other goal of prosecuting minors without giving them the protections of trial by jury and court-appointed counsel.

The legislature chose instead to pursue a modified strategy. They abandoned license revocation as a punishment for first offenders so that first offenders could be prosecuted without jury trials and without court-appointed defense counsel.

**9.** *Alexander v. Anchorage*, 490 P.2d 910, 913 (Alaska 1971); *Baker v. Fairbanks*, 471 P.2d 386, 401–02 (Alaska 1970).

**10.** 487 P.2d 27, 31–33 (Alaska 1971).

**11.** This aspect of AS 28.15.183 was changed in 1999; *see* SLA 1999, ch. 88, § 5. Under the current version of the statute—specifically, under

subsection (i)(2)—the minor's driver's license must be restored if the government does not prosecute the minor for consuming or possessing alcoholic beverages, or if the charge is dismissed, or if the minor is acquitted at trial.

**12.** 14 P.3d 264, 269–271 (Alaska 2000).

**13.** *Id.* at 272.

The amended version of AS 04.16.050 [14] creates three tiers of defendants: first offenders, "repeat" offenders, and "habitual" offenders. When the court sentences a "repeat" or "habitual" offender, the court must revoke the offender's driver's license and must order the offender to perform a specified minimum number of hours of "community work service" (*i.e.*, forced labor).[15] The legislature was aware that both of these penalties trigger a defendant's rights to jury trial and court-appointed counsel.

■ (As already explained, the Alaska Supreme Court held in *Baker* and *Alexander* that revocation of a driver's license is the type of penalty that triggers a defendant's rights to jury trial and court-appointed counsel. And this Court held in *Booth v. State*, 903 P.2d 1079, 1087–88 (Alaska App.1995), that community work service is also the type of penalty that triggers these procedural rights.)

■ But the legislature still hoped to allow the government to prosecute first offenders without giving them a jury trial or court-appointed counsel—by keeping the penalty for a first offense small enough to escape *Baker, Alexander*, and *Booth*. The problem with this strategy is that, under the Alaska Constitution, a person can not be subjected to increased criminal penalties as a repeat offender unless they were accorded the right to counsel in the proceedings that led to their prior conviction. *Pananen v. State*, 711 P.2d 528, 531–32 (Alaska App.1985).

Thus, the legislature was apparently caught between Scylla and Charybdis: If they made the penalty for a first offense too severe, first offenders would be entitled to a jury trial and to court-appointed counsel. Yet if they enacted a small penalty for a first offense, so that first offenders could be tried and convicted without a jury trial and without court-appointed defense counsel, the resulting conviction could not be used later to establish the youth's status as a "repeat" or "habitual" offender.

The drafters of AS 04.16.050 attempted to solve this problem by creating a new kind of criminal penalty. Under the current version of the statute, minors convicted for the first time of consuming or possessing alcoholic beverages still face a small fine (not less than $200 and not more than $600). But, in addition, they face a new penalty that the legislature labeled "probation".

*The nature of the probation authorized by AS 04.16.050*

AS 04.16.050(e) declares that all youths (including first offenders) who are sentenced for consuming or possessing alcoholic beverages must be placed on probation until they are twenty-one years old (or for one year, whichever is longer). The statute declares that the convicted youth "may not refuse probation".

As part of this probation, the court "may require the [offender] to pay for and enroll in a juvenile alcohol safety action program, if one is available." Moreover, the sentencing judge can authorize the officials of the alcohol safety action program to require the youth to submit to in-patient (*i.e.*, residential) treatment, so long as "the judgment specifies the maximum period of inpatient treatment authorized".[16] In addition to the possibility of enforced residential treatment, subsection (e) requires the sentencing judge to "impose the following conditions of probation":

(1) the person shall pay for and successfully complete any education or treatment recommended;

(2) the person may not consume inhalants or possess or consume controlled substances or alcoholic beverages, except [those provided by a parent, guardian, or spouse off licensed premises, or as part of medical treatment];

(3) the person shall timely complete any community work ordered, as provided in (f) of this section; and

(4) other conditions the court considers appropriate.

---

14. Enacted in SLA 2001, ch. 65, §§ 1 and 2.

15. *See* AS 04.16.050(c) ("repeat" offenders) and 04.16.050(d) ("habitual" offenders).

16. AS 04.16.050(g).

There is one other alternative available to the sentencing judge. Under subsection (b)(1) of the statute, a judge can grant a first offender a suspended imposition of sentence as provided in AS 12.55.085. However, any youth who receives a suspended imposition of sentence must likewise be placed on probation until they are twenty-one years old (or for one year, whichever is longer).[17]

Under AS 12.55.085, any person who receives a suspended imposition of sentence is released to "the charge and supervision of [a] probation officer", under "the terms and conditions that the court determines".[18] In addition, AS 04.16.050(b)(1) specifies that the youth's SIS probation can include "treatment" and "community work" in an amount determined by a "community diversion panel" (which the statute defines as "a youth court or other group selected by the court to serve as a sentencing option").[19]

Thus, whether a first offender receives a normal sentence or a suspended imposition of sentence, they must be placed on probation until they are twenty-one years old. And, because they are on probation, they can be ordered to submit to custodial in-patient treatment (*i.e.*, residential treatment which includes constraints on the patient's liberty equivalent to the constraints of incarceration), and they can also be ordered to perform community work service.

▮ Under Alaska law, a person facing either of these penalties has a right to trial by jury and (if indigent) a right to defense counsel at public expense. This Court has ruled that "[c]ustodial confinement in a residential alcohol treatment program is the functional equivalent of jail time and therefore constitutes a sentence of imprisonment".[20] Thus, a person who faces custodial in-patient alcohol treatment as a penalty for

an offense is entitled to a jury trial and to court-appointed counsel. Likewise, this Court held in *Booth v. State* that a person facing the possibility of community work service is entitled to these same procedural rights.[21]

In addition to custodial in-patient treatment and community work service, first offenders can be ordered to submit to "[any] other conditions [of probation] the court considers appropriate".[22] This clause is potentially quite expansive. For example, to pursue the aim of rehabilitating a youth who has consumed alcoholic beverages, a sentencing judge might require a youth to obey a curfew, or remain enrolled in school past the legally mandated age of 16, or find after-school employment. The judge might also forbid the youth from associating with friends who the judge believes are a bad influence.

Perhaps most significant, the youth's probation status would give the sentencing judge the opportunity to effectively revoke the youth's driver's license—the very penalty that, according to the supreme court's decision in *Niedermeyer*, can not be imposed unless a defendant is afforded the right to trial by jury and the right to court-appointed counsel.

▮ In *Baum v. State*, 24 P.3d 577, 581–82 (Alaska App.2001), this Court ruled that a sentencing judge can impose a condition of probation that requires a defendant to refrain from engaging in a licensed activity for a longer period than the amount of license suspension or revocation that could be imposed on the defendant as a direct component of the defendant's sentence. Indeed, the Alaska Supreme Court has ruled that a sentencing judge can, as a condition of probation, impose a penalty that the judge could

---

**17.** AS 04.16.050(b)(1).

**18.** *See* AS 12.55.085(a).

**19.** AS 04.16.050(b)(1).

**20.** *Dodge v. Anchorage,* 877 P.2d 270, 272 (Alaska App.1994) (citing *Lock v. State,* 609 P.2d 539 (Alaska 1980)); *cf. Hester v. State,* 777 P.2d 217, 219 (Alaska App.1989) (the addition of thirty days' in-patient treatment as a condition of the defendant's probation, when custodial treatment

was not specified in the original judgement, constituted an illegal increase in the defendant's sentence when the in-patient treatment program subjected the defendant to restraints equivalent to custody).

**21.** *Booth,* 903 P.2d at 1087–88.

**22.** AS 04.16.050(e)(4).

not impose as a direct component of the defendant's sentence. *See Brown v. State,* 559 P.2d 107, 109–110 (Alaska 1977) (holding that a judge can order a probationer to pay a fine even when the applicable sentencing statute does not authorize imposition of a fine as a direct component of the defendant's sentence).

It is therefore at least arguable that, as a condition of a first offender's probation, a judge could forbid the youth from operating a motor vehicle until the end of their probation—*i.e.,* until they turned twenty-one.

*Why the probation authorized by AS 04.16.050 differs from normal probation, and why we hold that a youth charged with violating AS 04.16.050 is entitled to a jury trial and, if indigent, to court-appointed defense counsel*

▮▮▮ Normally, probation is a counterpart to a suspended or partially suspended sentence. It is a contract between the court and the defendant: the defendant consents to be supervised and to live under the conditions imposed by the court in exchange for the court's agreement to suspend imposition of the defendant's sentence or to suspend execution of a prison term and/or a fine.[23] Because probation is a contract, and because this contract allows a judge to control a defendant's life in ways that the defendant may deem more burdensome than normal criminal penalties, a defendant is free to refuse probation and to insist on a normal sentence.[24]

But the probation mandated by AS 04.16.050(e) is not a contract. It has no relationship to whether any portion of the defendant's sentence is suspended. Nor is this probation the result of a voluntary agreement between the sentencing judge and the offender. The sentencing judge must place the defendant on probation until the defendant is twenty-one years old, and the defendant has no discretion to refuse.

In other words, this "probation" is unlike normal probation because it is automatic. And because all first offenders automatically receive this "probation", a sentencing judge automatically has the authority to order a first offender to submit to custodial in-patient treatment, to engage in community work service, and perhaps to surrender the privilege to operate motor vehicles—all penalties that trigger the defendant's right to trial by jury and the defendant's right to court-appointed counsel if indigent.

Seven centuries ago, the English philosopher William of Occam described a philosophical principle that is still employed to good effect today: the best explanation of a condition or phenomenon is the one that is the simplest, *i.e.,* the one that uses the fewest assumptions or hypotheses to adequately explain what is observed. This principle, known as Occam's razor[25], is used to pare away extraneous labels and concepts, thus allowing the unadorned truth of the matter to be seen. We now use Occam's razor on the case before us.

All youths convicted of violating AS 04.16.050 for the first time are automatically placed on "probation". As a consequence, in all such cases, sentencing judges are empowered to impose penalties on these youths that are sufficiently severe to trigger the rights to jury trial and court-appointed counsel. Using Occam's razor, we strip away the reference to "probation", and what is left is the unadorned truth: In all cases, first offenders convicted of violating AS 04.16.050 can be punished with penalties that are sufficiently severe to trigger the rights to jury trial and court-appointed counsel.

The statute does not oblige sentencing judges to impose these penalties on a first offender. But, as we held in *Booth v. State,* it is the possibility of these penalties that triggers the defendant's procedural rights.[26]

**23.** *Alvin v. State,* 42 P.3d 1156, 1159–1160 (Alaska App.2002); *Joubert v. State,* 926 P.2d 1191, 1193 (Alaska App.1996) (quoting *McRae v. State,* 909 P.2d 1079, 1083 (Alaska App.1996)).

**24.** *See Brown v. State,* 559 P.2d 107, 111 n. 13 (Alaska 1977); *Bland v. State,* 846 P.2d 815, 818

(Alaska App.1993); *Alfred v. State,* 758 P.2d 130, 131 (Alaska App.1988).

**25.** *See Webster's New World Dictionary of American English* (Third College Edition, 1988), p. 937.

**26.** *See Booth,* 903 P.2d at 1088.

We therefore hold that all youths (including first offenders) who are charged with violating AS 04.16.050 are entitled to trial by jury and, if they are indigent, to counsel at public expense.

### The State's alternative construction of AS 04.16.050, and why we reject it

In its arguments to this Court, the State acknowledges that penalties such as community work service and custodial in-patient treatment trigger the right to jury trial and the right to court-appointed counsel. But the State suggests that AS 04.16.050 does not authorize sentencing judges to force first offenders to engage in community work service or custodial in-patient treatment. This suggestion is based on the State's unusual interpretation of what AS 04.16.050(e) means by "probation".

The State concedes that the probation described in AS 04.16.050(e) is not like normal probation, for there is no suspended sentence hanging over the defendant. But the State takes this fact and gives it an unexpected twist:

Because the statute requires sentencing judges to place first offenders on probation even though, in most cases, there will be no suspended sentence to impose in the event that the defendant fails to honor the terms of probation, the State suggests that the legislature must not have intended to force defendants to comply with the terms of their probation. Instead, the State argues, the legislature crafted AS 04.16.050(e) with the expectation that defendants would be free to disregard the terms of their probation. The only real purpose of the probation, according to the State, is to establish the defendant's status as a second offender if the defendant is ever convicted again.

We find the State's suggestion far-fetched. We can think of few things that would be more certain to undermine respect for the law than to require a sentencing judge to impose conditions of probation that, by design, can never be enforced. AS 04.16.050(e) requires judges to place all first offenders on probation, and the statute also specifies the conditions of probation that a judge must impose. It seems improbable (to say the least) that the legislature would require sentencing judges to engage in the charade of ordering youths to comply with terms of probation if the legislature intended these terms of probation to be unenforceable.

### The State's request that we strike all provisions of the statute that allow a sentencing judge to require a first offender to submit to in-patient treatment, to engage in community work service, or to give up their right to drive

At oral argument, the State suggested an alternative way to resolve this case: to strike those portions of AS 04.16.050(e) that authorize a sentencing judge to impose custodial in-patient treatment, community work service, or any other penalty that would trigger the rights to jury trial and court-appointed counsel. We reject this suggestion for two reasons.

First, striking these provisions of the statute would leave little of the legislature's intended result. The legislature clearly wanted to subject underage drinkers to rehabilitative efforts that might include custodial in-patient treatment. They also intended to punish and deter underage drinkers by making them perform community work service. The importance of these two sentencing goals is apparent from the fact that in-patient treatment and community work service are listed separately among the permissible terms of probation in AS 04.16.050(e) and (g).

Second, even if we followed the State's suggestion and struck the provisions of the statute that authorize a sentencing judge to impose custodial in-patient treatment and community work service for first offenders, so that first offenders could be tried and convicted without a jury trial and without counsel, a major constitutional problem would remain. This problem would surface if the offender was ever prosecuted again under AS 04.16.050.

As explained above, we held in *Pananen v. State* that a person can not be subjected to increased criminal penalties as a repeat offender unless they were accorded the right to counsel in the proceedings that led to their

prior conviction.[27]  If we were to strike the major penalty provisions for first offenders, so that first offenders could be tried without counsel, *Pananen* says that the resulting conviction could not be used to establish the offender's status as a repeat offender in a subsequent prosecution.  Thus, the State's suggestion would defeat the legislature's scheme of increased penalties for "repeat" and "habitual" offenders (as these terms are defined in subsections (c) and (d) of AS 04.16.050).

*Conclusion*

The decision of the district court is AFFIRMED.  Auliye is entitled to a jury trial and, if she is indigent, to court-appointed counsel.

**27.**   711 P.2d 528, 531–32 (Alaska App. 1985).