**STATE of Alaska, Petitioner,**

v.

**Glen D. MORGAN Jr., Athena Komakhuk, and Kirk J. Peterson, Respondents.**

**Nos. A–8691, A–8725, A–8726.**

Court of Appeals of Alaska.

April 29, 2005.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Petitioner.

Margi A. Mock, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Respondents.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

COATS, Chief Judge.

The respondents, Glen D. Morgan Jr., Athena Komakhuk, and Kirk J. Peterson, were each charged under AS 04.16.050 with one count of possessing, controlling, or consuming alcoholic beverages by a person under the age of 21. Among other things, any person convicted for violating AS 04.16.050 must be placed on probation for one year, or until that person reaches the age of 21 years, whichever is longer. However, a court can impose imprisonment only for a third or subsequent offense.[1] Each respondent moved in

---

1. AS 04.16.050(d).

the district court for dismissal, arguing that this probation provision violates Alaska's equal protection law because the provision requires younger offenders to stay on probation longer than older offenders. District Court Judges Sigurd E. Murphy and Jack W. Smith agreed with the respondents, and dismissed the cases. The State petitioned for review of Judge Murphy's and Judge Smith's decisions. We granted the petitions, and then granted the State's motion to consolidate these cases. Because we conclude that the challenged probation provision does not violate equal protection, we reverse the decisions of the district court.

*Discussion*

■ The Alaska Constitution requires that similarly situated individuals be treated equally.[2] When analyzing a claim that a statute violates Alaska's equal protection clause, Alaska's appellate courts must balance the "significance of the individual right purportedly 'infringed, the importance of the regulatory interest asserted by the state, and the closeness of the fit between the challenged statute and the state's asserted regulatory interest."[3]

■ A properly enacted law is presumed to be constitutional, and "[c]ourts should construe enactments to avoid a finding of unconstitutionality to the extent possible. This is particularly so in a case [involving] a facial challenge as opposed to a challenge to the [enactment] as applied."[4]

In 2001, the Alaska legislature passed the current version of AS 4.16.050.[5] With some exceptions not pertinent in these cases, AS 04.16.050 makes it illegal for a "person under the age of 21 years" to knowingly consume, possess, or control alcoholic beverages.[6] Among other things, any person convicted of violating this statute must be placed on probation "for one year, or until the person is 21 years of age, whichever is later."[7] The person may not refuse probation.[8]

■ As already set out, the respondents challenge on equal protection grounds the requirement that any person convicted of violating AS 04.16.050 must be placed on probation for one year or until the person is 21 years of age, whichever is later.

In analyzing this challenge, we find that the respondents' interest involves an integral part of their punishment, that is, the length of their probation. Their interest in the length of their probation is the "relatively narrow interest" that a convicted offender has "in minimizing the punishment for an offense."[9] As explained by the United States Supreme Court, "[e]very person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees."[10] But once a person is lawfully convicted, that person is subject to "whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment."[11]

**2.** *See* Alaska Const. art. 1, § 1.

**3.** *Anderson v. State*, 904 P.2d 433, 435 (Alaska App.1995) (citing *State v. Enserch Alaska Constr., Inc.*, 787 P.2d 624, 631 (Alaska 1989)); *see also Maeckle v. State*, 792 P.2d 686, 688 (Alaska App. 1990).

**4.** *See Treacy v. Anchorage*, 91 P.3d 252, 260 (Alaska 2004) (supreme court rejected juveniles' equal protection challenge to municipality's curfew).

**5.** *See* ch. 65, SLA 2001. We set out the history of this statute in *State v. Auliye*, 57 P.3d 711, 713–15 (Alaska App.2002).

**6.** AS 04.16.050(a); the exceptions are set out in AS 04.16.051.

**7.** AS 04.16.050(e).

**8.** *Id.*

**9.** *See Anderson*, 904 P.2d at 436 (quoting *Maeckle*, 792 P.2d at 689).

**10.** *Chapman v. United States*, 500 U.S. 453, 465, 111 S.Ct. 1919, 1927, 114 L.Ed.2d 524 (1991), superceded by rule on other grounds as stated in *United States v. Turner*, 59 F.3d 481 (4th Cir. 1995).

**11.** *Chapman*, 500 U.S. at 465, 111 S.Ct. at 1927 (internal citations omitted).

Meanwhile, with regard to the second factor, we find that the State has a compelling interest in preserving the health and welfare of minors.[12]

Finally, with regard to the third factor, when the State's interest in enacting the challenged statute is sufficiently strong, and the individual's interest is low, then the challenged statute must bear a "substantial relationship" to the state's asserted regulatory interest.[13]   In this case, because the State's interest in preventing underage drinking is sufficiently strong, and the importance of the respondents' interest relatively low, we must determine whether the challenged probation provision of AS 04.16.050 has a substantial relationship to the social policy of preventing underage drinking.

### There is a substantial relationship

The legislative history of this statute shows that the drafters wanted to deter underage drinking, and to identify and treat minors with alcohol abuse problems.   In 2001, State Representative Norman Rokeberg introduced House Bill 179 to amend AS 04.16.050.   Among other things, one of the proposed amendments required that all offenders be placed on probation for one year or until the offender turned 21 years old, whichever was later.[14]   When asked by the House Judiciary Committee to explain House Bill 179's objective, Representative Rokeberg responded that "[w]e're trying to dissuade juveniles from consuming alcohol."   A representative from the Department of Law emphasized to the committee that

a way to instill the idea that offenders may not drink until they become 21 is to place offenders on open-court, unsupervised, informal probation until they are 21.   Then, when the offender reaches the age of 21, he [or] she is off probation.

Representative Rokeberg later advised the House Finance Committee that

[s]tatistics show that the earlier a person begins drinking, the more likely they are to have problems with alcohol later in life. By sending a message early to minors that their actions will not go unpunished, we hope to deter alcohol problems in the future.

Finally, when the bill went before the Senate Judiciary Committee, a representative from the Department of Health and Human Services said that with regard to treating minors who unlawfully consume alcohol, "monitoring is key.... [The] goal is to get the monitoring and provide treatment to intervene early."   In other words, the statute's probation period would assure that courts were part of the monitoring process.

To support its claim that there is a substantial relationship between the statute and the goal of preventing underage drinking, the State argues that minors who drink at younger ages logically require more monitoring than older offenders for two reasons.   First, there is a longer period when younger offenders can re-offend.   Once minors have been found guilty of offending, the probation period keeps these offenders under court supervision until they are old enough to legally consume or possess alcohol.   Second, people who begin drinking at younger ages have a greater risk of having problems with alcohol later in life.   This second reason was specifically discussed during the April 2001 House Finance Committee hearing.   As already mentioned, Representative Rokeberg pointed out that "statistics show that the earlier a person begins drinking, the more likely they are to have problems with alcohol later in life. By sending a message early to minors that their actions will not go unpunished, we hope to deter alcohol problems in the future."

This record demonstrates that, because of the potential danger and social cost associat-

---

**12.**   *See Treacy,* 91 P.3d at 265 (in reviewing municipality's curfew ordinance, court ruled that government has a compelling interest in protecting "minors from crime and to curb juvenile crime"); *L.A.M. v. State,* 547 P.2d 827, 834 (Alaska 1976) ("The State has a legitimate interest in protecting children from venereal disease, from exposure to the use of dangerous and illicit drugs, from attempted rape, and from physical injury"); *see also L.A.M.,* 547 P.2d at 836 n. 1 (Boochever, J., concurring).

**13.**   *See Allam v. State,* 830 P.2d 435, 440 (Alaska App.1992).

**14.**   AS 04.16.050(e).

ed with underage drinking, the legislature enacted the mandatory probation provision to, among other things, deter minors from consuming alcohol. The record also demonstrates that for those minors who could not be deterred, the legislature wanted to keep minors convicted of violating this statute under State and court supervision until they were able to legally consume or possess alcohol.

The legislature could reasonably determine that in cases involving unlawful consumption or possession of alcohol, younger offenders are more vulnerable and have a higher risk than older offenders of incurring physical or mental health problems, of becoming crime victims, or of committing crimes. Nor, for example, was it unreasonable for the legislature to determine that thirteen-year-olds with an alcohol problem may need more intervention and monitoring than eighteen-year-olds with a similar alcohol problem. In light of the State's interest in preventing the health and social problems that are associated with underage drinking and because the younger offenders are more at risk than are older offenders, then the legislature could properly decide that the State and the courts should monitor younger offenders longer than older offenders. We also note that based on its stated goal, the legislature could determine that there was no point in monitoring a person much beyond the age when that person can legally drink alcoholic beverages. That is, although the legislature could have required that all offenders be placed on probation for a set period of time-for instance, 5 years-the legislature could reasonably decide that keeping an eighteen-year-old on probation for 5 years (until the age of 23) did little to advance the goal of preventing underage drinking.

We find that the challenged provision of the statute has a substantial relationship to the legislature's goal of preventing unlawful underage drinking. Considering that the legislature may (and does) restrict minors' freedom in ways that would be unconstitutional if applied to adults,[15] we conclude that the statute on its face does not, by placing all minors convicted of illegally consuming or possessing alcohol on probation for one year or until they turn 21, whichever is longer, violate equal protection.

*Conclusion*

The decisions of the district court are REVERSED, and these cases are REMANDED for further proceedings.

MANNHEIMER, Judge, dissenting.

Alaska Statute 04.16.050, the statute that prohibits the possession and consumption of alcoholic beverages by minors, carries a sliding punishment that hinges solely on the offender's age. Regardless of the particular facts of the offense, and regardless of the particular offender's background or individual prospects for rehabilitation, the statute requires a sentencing court to place every convicted offender on probation until the offender's twenty-first birthday (or for one year, whichever will result in a longer term of probation). *See* AS 04.16.050(e).

As we explained in *State v. Auliye,* 57 P.3d 711 (Alaska App.2002), the "probation" imposed under this statute differs from normal probation in two crucial ways. First, the sentencing judge has no discretion in the matter; the specified probation *must* be imposed. Second, the convicted offender has no right to refuse probation and demand a normal sentence.[1]

Thus, a 13–year–old convicted of possessing or consuming alcoholic beverages must receive a term of probation of between 7 and 8 years. In contrast, a 15–year–old offender must receive a term of probation of between 5 and 6 years. And an 18–year–old offender must receive a term of probation of between 2 and 3 years. In other words, the punishment for this crime is progressively more severe according to the youthfulness of the offender.

The question presented in this appeal is whether the Alaska Constitution allows the legislature to enact such a system of criminal

---

15. *See Allam,* 830 P.2d at 436–37. *See also L.A.M.,* 547 P.2d at 836 n. 1 (Boochever, J., concurring).

1. *Auliye,* 57 P.3d at 712, 717.

punishment—a punishment that becomes increasingly severe based solely on the increasing youth of the offender. I conclude that this punishment scheme violates the due process and equal protection clauses of our state constitution.

*The constitutional consequences of the legislature's decision to prosecute and punish these minors as adults, rather than dealing with under-age drinking through the juvenile justice system*

Until 1995, older minors (ages 18 through 20) who possessed or consumed alcoholic beverages in violation of AS 04.16.050 were prosecuted and punished under the adult criminal justice system. These minors faced prosecution for a misdemeanor that carried a penalty of up to 1 year's imprisonment, and they faced probation (*i.e.*, normal probation, coupled to a suspended term of imprisonment) of up to 10 years.[2]

In contrast, offenders younger than 18 were referred to the juvenile justice system.[3] Under Alaska's juvenile delinquency laws, these minors faced potential institutionalization, or involuntary placement in a foster home, or probation supervised by the Department of Health and Social Services.[4] However, the superior court's jurisdiction over these minors ended upon their 19th birthday.[5]

Then, beginning in 1995, the legislature took several steps aimed at abolishing jury trials for minors accused of possessing or consuming alcoholic beverages. As we explained in *State v. Auliye*, the legislature pursued this goal by amending both AS 04.16.050 and the juvenile delinquency laws.[6]

The legislature amended AS 04.16.050 by abolishing imprisonment as a punishment for this crime except for third or subsequent offenses.[7] In place of imprisonment, the legislature enacted the current system of mandatory probation until an offender's 21st birthday—a probation that can include involuntary in-patient treatment for alcohol abuse, as well as involuntary community work service.[8]

And, because minors are entitled to a jury trial if they are prosecuted under the juvenile justice system for conduct that would be a crime if committed by an adult,[9] the legislature amended the juvenile delinquency jurisdictional statute to exempt prosecutions of minors for possessing or consuming alcoholic beverages (again, except for third or subsequent offenses).[10] In other words, under current law, these minors are now prosecuted and punished as adults. They are not referred to the juvenile justice system, no matter how young they are.[11]

This legislative decision—the decision to require adult prosecution of all minors who possess or consume alcoholic beverages—

---

**2.** *See Auliye*, 57 P.3d at 713; AS 12.55.090(c). (Before 1994, the maximum period of probation under AS 12.55.090(c) was 5 years).

**3.** *Auliye*, 57 P.3d at 713.

**4.** AS 47.12.120(b) (formerly AS 47.10.080(b)).

**5.** *Id.*

**6.** *Auliye*, 57 P.3d at 713–15.

**7.** *See* AS 04.16.050(d), which makes a third or subsequent offense a class B misdemeanor. Persons who commit a class B misdemeanor are subject to imprisonment for up to 90 days. AS 12.55.135(b).

**8.** *See Auliye*, 57 P.3d at 715–16.

**9.** *R.L.R. v. State*, 487 P.2d 27, 33 (Alaska 1971).

**10.** The exception for third and subsequent offenses is designed to allow the institutionalization of younger minors who are convicted three or more times of possessing or consuming alcoholic beverages. As noted in footnote 7, a third or subsequent violation of AS 04.16.050 is a class B misdemeanor. That is, if a minor is prosecuted under the adult criminal system, the punishment for a third offense can include imprisonment. In order to allow imprisonment of younger third offenders, but to keep these younger offenders segregated from an adult jail population, the legislature re-asserted juvenile jurisdiction over these offenders. Even though all minors who commit a first or second offense are prosecuted as adults, AS 47.12.030(b)(5) declares that minors under the age of 18 who commit a third offense are covered by the delinquency laws—which means that these minors are subject to institutionalization under AS 47.12.120(b).

**11.** *Auliye*, 57 P.3d at 713.

means that a different set of rules now governs the punishment that can be imposed on these minors.

The juvenile justice system is premised on a *parens patriae* theory [12]—the concept that the State takes a "benevolent attitude . . . toward more youthful offenders" [13] because, generally, "a person under eighteen years of age does not have mature judgment and may not fully realize the consequences of [their] acts".[14] The actions taken against a minor under the juvenile justice system are geared toward individual treatment and reformation, not toward general deterrence or community condemnation.[15]

Thus, the different types of disposition that can be imposed on juvenile offenders—probation, removal into foster care, and even institutionalization—are not viewed as punishments, but rather as rehabilitative measures. For this reason, it does not violate the equal protection clause to place a juvenile offender in the care of the State for several years even though an adult who engaged in the same criminal conduct might face a relatively slight penalty.[16]

Before 1995, these rehabilitative principles governed the measures that might be applied, under the juvenile justice system, to minors who possessed or consumed alcoholic beverages. But now the legislature has decreed that these minors are to be prosecuted and punished as adults.

This means that when the State imposes penalties on minors for possessing or consuming alcoholic beverages, the State can no longer justify its actions by relying on the benevolent, rehabilitative model of the juvenile justice system. These minors are being treated as adults, and the penalties imposed on them are punishments for a crime.

In consequence, these minors are entitled to claim the benefit and protection of the legal principles that govern the imposition of criminal sanctions. The State can no longer rely on the doctrine of *parens patriae*, or on any purported benevolent intent, to avoid questions arising under the due process clause or the equal protection clause.

*The penalty scheme enacted in AS 04.16.050 is unconstitutional because it irrationally punishes younger offenders more severely, based solely on their youth*

The State has an important interest in curbing under-age drinking; indeed, the minors pursuing the present appeal concede that this is so.[17] Moreover, it is for the legislature to decide which offenders and which offenses should be prosecuted within the normal criminal justice system as opposed to the juvenile justice system.[18] And finally, subject to constitutional limitations, the legislature has the discretion to decide what the punishment for a particular offense should be.[19]

In light of these principles, it is clear that the legislature has the authority to decide that minors who possess or consume alcohol should be prosecuted and punished as adults. And, generally speaking, a criminal defendant can not challenge the legislature's assessment of the proper penalty range for a particular offense. Thus, as the State correctly notes in its brief, the minors have no right to demand the lesser term of probation imposed by the juvenile justice system (*i.e.*, probation not to exceed a delinquent minor's 19th birthday) as opposed to the greater

12. *Rust v. State*, 582 P.2d 134, 139–140 (Alaska 1978).

13. *Henson v. State*, 576 P.2d 1352, 1354 (Alaska 1978).

14. *P.H. v. State*, 504 P.2d 837, 841 (Alaska 1972).

15. *State v. Sandsness*, 72 P.3d 299, 302–03 (Alaska 2003); *Nao v. State*, 953 P.2d 522, 525 (Alaska App.1998).

16. *See M.O.W. v. State*, 645 P.2d 1229, 1231 n. 4 (second paragraph) (Alaska App.1982).

17. *See State v. Esmailka*, 961 P.2d 432, 435 (Alaska App.1998) ("No one questions the authority of the legislature to prohibit and punish under-age possession or consumption of alcoholic beverages.").

18. *Nao v. State*, 953 P.2d 522, 525 (Alaska App. 1998).

19. *Alex v. State*, 484 P.2d 677, 685 (Alaska 1971); *Malloy v. State*, 1 P.3d 1266, 1282 (Alaska App. 2000).

term of probation mandated by AS 04.16.050 (*i.e.*, mandatory probation until the offender's 21st birthday).

But the minors do not raise these issues. Rather, they attack the penalty provision of AS 04.16.050 because, under this provision, the penalty for the offense automatically increases according to the youthfulness of the offender.

When the legislature establishes the range of punishment for a crime, it must do so rationally. Using the language of substantive due process, the penalty scheme must bear a "reasonable relationship to a legitimate governmental purpose".[20] Or, using the language of equal protection, the penalty scheme "must be reasonable, not arbitrary", so that differences in punishment "rest upon some ground of difference having a fair and substantial relation to the object of the legislation".[21]

It is true, as the State asserts, that persons convicted of a crime have very little protected interest in avoiding incarceration or other restraints on their liberty. However, the legislature must act rationally when it inflicts differing degrees of punishment on people whose conduct violates the same basic social interest. Before singling out one group of offenders for more severe punishment, the legislature must have a reasonable basis for concluding, from these offenders' underlying conduct or their criminal history, that they (as a group) are indeed more blameworthy or more dangerous than their fellow offenders.[22]

According to Article I, Section 12 of our state constitution, the objectives of punishment within our criminal justice system are the rehabilitation of the offender, the protection of the public, community condemnation of antisocial behavior, and the vindication of victims' rights.[23] For purposes of a due process or equal protection analysis, the question is whether the scheme of sliding penalties codified in AS 04.16.050 bears a reasonable relationship to these objectives.

At first blush, it would seem that the challenged penalty scheme is completely at odds with these goals. Under AS 04.16.050(e), the length of the probation imposed on offenders has nothing to do with the facts of their particular offense, nor with their history of prior conduct (whether good or bad). Instead, it hinges solely on the offender's age— with younger offenders receiving longer terms of probation.

Our society recognizes that, generally speaking, the younger a person is, the more impulsive they are, and the less understanding they have of the nature and consequences of their conduct. In addition, the normal assumption is that, the younger a person is, the more amenable they are to rehabilitative measures. It therefore seems counter-intuitive to assert that offenders should be punished increasingly severely the younger they are.

The State nevertheless asserts that this scheme of sliding penalties is justified by statistical research which shows that "the incidence of lifetime alcohol abuse and dependence is greatest for those who begin drinking between the ages of 11 and 14 years",[24]

**20.** *Concerned Citizens of the South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974); *Patterson v. State*, 985 P.2d 1007, 1017–18 (Alaska App.1999).

**21.** *Dancer v. State*, 715 P.2d 1174, 1181 (Alaska App.1986), quoting *Stiegele v. State*, 685 P.2d 1255, 1257 (Alaska App.1984).

**22.** *See Smith v. State*, 28 P.3d 323, 325–26 (Alaska App.2001); *Pruett v. State*, 742 P.2d 257, 262–63 (Alaska App.1987). See also *Bourdon v. State*, 28 P.3d 319, 323 (Alaska App.2001), where we held that "[when] the legislature [denies] post-conviction bail to dangerous offenders, ... it must act in an even-handed manner". That is, the legislature must have some reasonable basis for concluding that the types of offenders who

are not eligible for post-conviction bail release do indeed pose a greater danger than the types of offenders who are eligible for bail release.

**23.** Alaska Constitution, Art. I, § 12. *See Perrin v. State*, 543 P.2d 413, 414 (Alaska 1975); *Dancer v. State*, 715 P.2d 1174, 1182 (Alaska App.1986).

**24.** Susan E. Foster, Roger D. Vaughan, William H. Foster, and Joseph A. Califano, Jr: *"Alcohol Consumption and Expenditures for Underage Drinking and Adult Excessive Drinking"*, Journal of the American Medical Association, Vol. 289, No. 8 (February 26, 2003), pp. 989–995.

(Abstract available at % ihttp://jama.ama-assn.org/content /vol289/issue8/ index.dtl—or full text with subscription.)

and that people who start drinking alcoholic beverages before the age of 15 "are 4 times more likely to become alcohol dependent than [people] who do not drink before [reaching the age of] 21 years".[25] The State reasons that if younger drinkers are more at risk, then it makes sense to place them under state supervision—*i.e.*, to place involuntary restrictions on their conduct—for longer periods of time.

But even if we assume that the State's statistical research is accurate, these statistics can be analyzed in at least two different ways. The statistical correlation between early drinking and later alcoholism or alcohol dependency may indicate that there is a cause-and-effect relationship between early drinking and later adult alcoholism or alcohol dependency. However, the statistical correlation may simply indicate that the people who are most strongly predisposed to alcoholism or alcohol dependency are also the people least likely to obey the drinking laws (whether as children or adults).

Moreover, even if the statistical correlation does indeed suggest a cause-and-effect relationship between early drinking and later alcoholism or alcohol dependency, this relationship is still not sufficient to justify the challenged penalty scheme.

It may be that, among the overall population of our society, people who begin drinking at younger ages are more likely to have problems with alcohol when they become adults. But in the context of sentencing a minor for possessing or consuming alcoholic beverages, the question is not what behavior we might expect from a child who begins drinking at an early age. Rather, the question is what behavior we might expect from a child who begins drinking at an early age *and who then receives the benefit of intervention and treatment.*

The criminal law does not allow the government to imprison or supervise people simply for "their own good", nor does the criminal law allow the government to subject people to imprisonment or involuntary supervision simply because there is good reason to believe that they are dangerous. Under the criminal justice system, we can impose a penalty on a person only if that penalty is a lawful punishment for a specified offense.

As I explained earlier, society's power to impose penalties and involuntary supervision on a minor is much broader under the juvenile justice system. Under the juvenile system, the government can potentially supervise a minor for whatever period remains until the minor reaches the age where the juvenile court's jurisdiction ceases. Courts have upheld this authority because the supervision imposed under the juvenile justice system is viewed as a rehabilitative measure employed by the State in its role as *parens patriae.* The supervision is not viewed as punishment for wrongdoing.

(Moreover, although the superior court may potentially supervise a delinquent minor until the minor's 19th birthday, this is not automatic. The superior court can order institutionalization or supervision of a delinquent minor for only two years at a time, and this order must be reviewed yearly.[26] At the end of the two-year period, the court can extend its order, but only if the State shows that continued supervision "is in the best interests of the minor and the public".[27])

This same distinction between criminal "punishment" and non-criminal remedial or protective measures was the basis for this Court's decision in *Herreid v. State,* 69 P.3d 507 (Alaska App.2003), where we rejected the claim that convicted sex offenders were entitled to individualized consideration of whether, and for how long, they should be required to register as sex offenders. We held that the government could impose a uniform period of registration on all sex offenders, regardless of the individual circumstances of their conduct or their background, because registration is not a criminal punishment for their offense.[28]

But minors accused of possessing or consuming alcoholic beverages are prosecuted as

---

**25.** *Id.*

**26.** AS 47.12.120(b) and (d).

**27.** AS 47.12.120(b)(1), (b)(2)(A), and (b)(3)(A).

**28.** *Herreid,* 69 P.3d at 508–09.

adults, not as juveniles. And if they are convicted, they suffer a criminal punishment, not a benevolent rehabilitative measure.

The mandatory probation called for in AS 04.16.050 (*i.e.*, mandatory probation until the offender's 21st birthday) is imposed as a punishment for a particular criminal offense—the act of possessing or consuming alcoholic beverages. The fact that the defendants prosecuted and punished under this statute happen to be minors does not alter the fact that they are entitled to the same constitutional protections as other criminal defendants. To echo the words of our supreme court in *R.L.R. v. State*, "regardless of benevolent-sounding labels", involuntary probation, "[even] when applied to children, is a taking of liberty under the Fourteenth Amendment." [29]

In Alaska, criminal punishment is based on the "just deserts" theory.[30] Under this theory of punishment, "decisions with respect to a particular [offender's sentence are] to be made on the basis of what the person has done, not on some speculative expectation of what [they] might do in the future." [31] Moreover, in AS 12.55.005, the Alaska Legislature has declared that one of the major aims of Alaska sentencing law is "the elimination of unjustified disparity in sentencing". (The Alaska Supreme Court has declared that appellate review of sentences has this same goal. *See Nicholas v. State*, 477 P.2d 447, 448–49 (Alaska 1970).)

The elimination of unjustified disparity in sentencing is normally thought to require individualized consideration and assessment of a defendant's background and the facts of their offense.[32] But this does not happen when an offender is sentenced for violating AS 04.16.050. Regardless of the facts of the case, and regardless of the defendant's background, every defendant must receive probation and its attendant consequences—chief among which are potential involuntary work service and potential involuntary commitment to an in-patient treatment facility.

Moreover, the length of this probation is mandatory. Again, regardless of the facts of the case, and regardless of the defendant's background, the statute requires a probation whose length is inversely related to the offender's age. The younger the offender, the lengthier the probation. This appears to be the embodiment of unjustified disparity in sentencing—because the normal assumption is that younger offenders pose less danger to the community and are more amenable to treatment.

Of course, when assessing the proper punishment for a criminal offense, our law recognizes that increased punishment can be justified if there is an articulable reason to believe that the offender will be more resistant to, or less able to benefit from, rehabilitative measures. But this means that the sliding scale of punishment codified in AS 04.16.050 can pass muster only if there is reason to believe that, simply by virtue of their age, the youngest offenders being sentenced for possessing or consuming alcoholic beverages will be the most resistant to intervention and treatment.

The legislature made no finding on this point. The State's statistics are silent on this point. And this proposition seems irrational on its face.

Accordingly, I conclude that the penalty scheme codified in AS 04.16.050 violates the due process and equal protection clauses of the Alaska Constitution, and I would affirm the rulings of the district court in the three minors' cases.

**29.** 487 P.2d 27, 31 (Alaska 1971).

**30.** *Braaten v. State*, 705 P.2d 1311, 1324 (Alaska App.1985).

**31.** *State v. Andrews*, 707 P.2d 900, 917 n. 14 (Alaska App.1985), quoting *Alaska Criminal Code Revision, Tentative Draft*, Part 6 (Feb.1978), pp. 19–20.

**32.** *See State v. Wentz*, 805 P.2d 962, 965 (Alaska 1991) (the range of reasonable sentences for a particular offense must be determined "by an examination of the particular facts of the individual case in light of the total range of sentences authorized by the legislature for the particular offense"); *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970) (sentences are to be evaluated for excessiveness by assessing "the nature of the offense, the character of the offender, and the protection of the public interest").