NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| EDWARD CHINUHUK, WILLIAM ALEXIE, HERMAN MALUTIN, CHRISTOPHER WASILI, and ROSS APANGALOOK, | Court of Appeals Nos. A-11574, A-11599, A-11600, A-11716, & A-11697 |
| Appellants, | Trial Court Nos. 3AN-09-9305 CR, 3AN-07-1674 CR, 3AN-09-9927 CR, 4BE-06-846 CR, & 2NO-07-832 CR |
| v. | |
| STATE OF ALASKA, | O P I N I O N |
| Appellee. | No. 2580 — January 12, 2018 |

Consolidated Appeals from the Superior Court, Third Judicial District, Anchorage, Gregory A. Miller, Kevin M. Saxby, and Michael R. Spaan, Judges.

Appearances: Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellants. Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

In 2006, the Alaska Legislature amended AS 12.55.125 (the statute that prescribes the sentences for felonies) by adding subsection (o). [1] This new subsection created a special sentencing rule that applied to most defendants convicted of sexual felonies (all except those defendants who are subject to a mandatory term of 99 years' imprisonment).

Under subsection (o), the superior court was required to suspend a specified amount of the defendant's sentence of imprisonment, and to place the defendant on probation for a specified number of years after the defendant finished serving their active term of imprisonment.

Normally, under Alaska common law, a defendant is entitled to reject a sentence that calls for probation and suspended jail time (in favor of a sentence that consists wholly of active imprisonment). [2] But AS 12.55.125(o) declared that the special terms of probation specified in the statute "[could] not be suspended or reduced".

The five defendants in this consolidated appeal were convicted of sexual felonies, and they were sentenced in accordance with subsection (o). All five defendants received sentences that included suspended jail time, and they were all ordered to serve a term of probation after they completed their active terms of imprisonment.

Each of the five defendants later violated the conditions of their probation. And at their ensuing probation revocation hearings, the defendants asked the superior court to (1) impose all of their remaining suspended jail time, and then (2) terminate their probation — even though the defendants had not yet spent the minimum number of years on probation specified in subsection (o).

---

[1] Enacted by SLA 2006, ch. 14, § 7.

[2] *See Brown v. State*, 559 P.2d 107, 111 n. 13 (Alaska 1977) (holding that a defendant has the right to refuse probation).

In all five cases, the superior court imposed the defendants' remaining jail time, but the court refused to honor the defendants' rejection of further probation. The court ruled that, because subsection (o) declared that the special term of probation could not be "suspended or reduced", the five defendants had no right to reject further probation (and the court had no authority to end the defendants' probation) until the defendants had spent the minimum number of years on probation specified in the statute.

The five defendants appealed the superior court's refusal to end their terms of probation, and we consolidated these appeals for decision.

*Why we reject the defendants' contention that these appeals are moot*

The procedural posture of this case changed in the summer of 2016, when the legislature repealed AS 12.55.125(o). *See* SLA 2016, ch. 36, § 179. Following the repeal of subsection (o), the five defendants jointly filed a motion asking this Court to dismiss their appeals as moot. In this motion, the defendants argued that, because subsection (o) had been repealed, they were now entitled to exercise their normal right under Alaska law to reject any further probation.

The State opposed the defendants' motion. In its opposition, the State relied on AS 01.10.100(a) — a statute which codifies the general principle that the legislature's enactment or repeal of a statute is not retroactive unless the enacting or repealing session law declares so:

> (a) The repeal or amendment of a law does not release or extinguish any penalty, forfeiture, or liability incurred or right accruing or accrued under that law, unless the repealing or amending act so provides expressly. The law shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of the right, penalty, forfeiture, or liability.

– 3 –                                                    2580

More specifically, the State argued that AS 12.55.125(o) imposed a special type of penalty on defendants convicted of sex offenses — a period of probation that ran for the specified number of years, and that could not be suspended or reduced. Relying on AS 01.10.100(a), the State argued that the repeal of AS 12.55.125(o) did not "extinguish" this special penalty for defendants who had already been sentenced under the statute (because the repealing legislation did not declare that the repeal was retroactive). Thus, the State concluded, the five defendants in this case were still subject to a probation that could not be reduced, even if the defendants wanted to exercise their normal right to reject probation.

We conclude that the State is correct in asserting that the special probation requirement of subsection (o) continues to govern the defendants' sentences even though subsection (o) was repealed in 2016. In reaching this conclusion, we are guided by the United States Supreme Court's decision in *Warden of Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974).

The defendant in *Marrero* was convicted of narcotics offenses under federal law. Marrero was a second offender and, at that time, federal sentencing law declared that defendants in Marrero's situation were not eligible for parole.[3] But Congress later enacted a comprehensive revision of the drug sentencing laws — and, under the revised law, defendants in Marrero's situation were eligible for parole.[4] Based on the new sentencing law, Marrero sought a judicial ruling that he was eligible to apply for parole.

The Supreme Court ruled that the older version of the law continued to govern Marrero's case. In reaching this conclusion, the Supreme Court relied on a

---

[3] *Marrero*, 417 U.S. at 654-55, 94 S.Ct. at 2533-34.

[4] *Id.*, 417 U.S. at 655, 94 S.Ct. at 2534.

provision of the new sentencing law which declared that the new law did not affect "prosecutions for any violation of law occurring [before the effective date of the new law]". The Supreme Court held that the older (and now repealed) sentencing provisions were a substantive component of any "prosecution" under the old law — and, thus, Congress's repeal of the old law did not affect sentences imposed under that old law. [5]

Of course, the present case is not governed by federal law. Rather, it is governed by the provisions of AS 01.10.100(a) — but the underlying principle is the same. AS 01.10.100(a) declares that the repeal of a law "does not release or extinguish any penalty [or] liability incurred ... under [the former] law, unless the repealing or amending act so provides expressly." The statute further declares that the former law "shall be treated as remaining in force for the purpose of sustaining any ... prosecution for the enforcement of the ... penalty ... or liability."

We interpret this statute to mean that the special probation clause of the now-repealed AS 12.55.125(o) continues to govern the defendants' cases. For this reason, the legislature's repeal of AS 12.55.125(o) has not mooted the defendants' appeals.

*Why we conclude that defendants sentenced under the now-repealed AS 12.55.125(o) are not entitled to reject the special term of probation required by that statute*

The legislature enacted AS 12.55.125(o) in 2006, as part of a comprehensive reform of sex offense sentencing laws. [6] The legislature's purpose in

---

[5] *Id.*, 417 U.S. at 657-58, 94 S.Ct. 2535.

[6] See generally the "Letter of Intent" accompanying Senate Bill 218 (24th Legislature), found at 2006 Senate Journal 2207-2215 (February 16, 2006). Although AS 12.55.125(o)

(continued...)

amending the sentencing provisions for sex offenders was to provide "longer sentences for, and closer supervision of, convicted sex offenders."[7]

The motive for requiring closer post-incarceration supervision of sex offenders was the legislature's belief that most sex offenders probably could not be rehabilitated.[8] For example, one early proposal — Senator Gretchen Guess's Senate Bill 223 — would have imposed a mandatory lifetime probation on any person convicted of first-, second-, or third-degree sexual abuse of a minor.[9] As ultimately enacted, AS 12.55.125(o) called for a graduated series of probation periods: a minimum of 15 years' supervision for defendants convicted of unclassified sexual felonies, a minimum of 10 years' supervision for defendants convicted of class A or class B sexual felonies, and a minimum of 5 years' supervision for defendants convicted of class C sexual felonies.

These mandated periods of probation supervision were meant to be accompanied by sex offender treatment and periodic polygraph examinations. The idea

---

[6] (...continued)
was ultimately enacted as part of Senate Bill 218, the origin of special terms of probation for sex offenders can be traced back to three bills introduced on January 9, 2006: Senate Bill 218 sponsored by Senator Con Bunde, Senate Bill 223 sponsored by Senator Gretchen Guess, and House Bill 353 sponsored by Representatives Mark Neuman and Bob Lynn. *See* SB 218, SB 223, and HB 353 (24th Legislature), available at:
http://www.legis.state.ak.us/basis/start.asp?session=24.

[7] Letter of intent accompanying Senate Bill 218, 2006 Senate Journal 2207 (February 16, 2006).

[8] *Id.* at 2211: "The failure of treatment in rehabilitating most sex offenders provides little hope that longer sentences will deter future crimes." During committee hearings, various individual legislators expressed similar views. See, for example, the remarks of Rep. Mark Neuman found in the minutes of the House Judiciary Committee for February 8, 2006 @ 1:59:59.

[9] *See* Senate Bill 223, § 10 (24th Legislature).

was that, even if sex offenders could not be rehabilitated, they could at least be closely monitored and deterred from committing new offenses following their release from prison. [10]

The legislature was aware that, under Alaska law, defendants could normally reject probation, so the legislators tried to draft the new probation requirements so that defendants would not have a right to reject this post-release supervision.

We note, in particular, the testimony of Deputy Commissioner of Corrections Portia Parker to the Senate Finance Committee on February 2, 2006, and the statement of Senator Con Bunde to the House Judiciary Committee on February 15, 2006.

In Ms. Parker's testimony, she informed the Committee that some sex offenders chose to reject probation or parole because they did not want to be subjected to polygraph monitoring — and she told the Committee that the provisions of Senate Bill

---

[10] See the Letter of Intent accompanying Senate Bill 218, 2006 Senate Journal at 2211-12: "For most offenders[,] the hope for deterrence in Senate Bill 218 is provided by the increased probation periods and the use of the polygraph while on probation or parole. The polygraph will help to provide an early warning system during supervision that will put the probation or parole officer on notice that corrective action is necessary due to signs of deception or offending behavior."

See also the testimony of Deputy Commissioner of Corrections Portia Parker to the Senate Finance Committee (Minutes of the Senate Finance Committee for February 2, 2006 @ 9:38:18). Ms. Parker told the Committee that mandatory probation "would guarantee that the offender will be on supervision for at least some period of time; they will be in treatment, and they will be polygraphed."

In a similar vein, Rep. Mark Neuman told the House Judiciary Committee that mandatory probation for sex offenders, accompanied by regular polygraph testing, would reduce the number of sexual assaults. See Minutes of the House Judiciary Committee for February 2, 2006 @ 1:59:59.

218 were intended to make sure that all sex offenders would undergo some period of post-release supervision and monitoring. [11]

In Sen. Bunde's statement to the House Judiciary Committee, he explained that the new law called for mandatory probation supervision because, under the current law, some sex offenders chose to serve their full sentence of imprisonment in order to avoid any supervision after they were released. Sen. Bunde told the Committee that the new periods of mandatory probation could not be suspended or reduced, and that this mandatory probation would include periodic polygraph examinations. [12]

In the present appeal, the defendants acknowledge this legislative history, and they concede that the purpose of AS 12.55.125(o) was to require all felony sex offenders to undergo a mandatory period of supervision following their release from prison. However, the defendants argue that there is no indication that the legislature intended to alter the normal rule that probation must be accompanied by a suspended term of imprisonment — a term of imprisonment that can be imposed if the defendant violates the conditions of probation. [13]

---

[11] Testimony of Portia Parker, Minutes of the Senate Finance Committee for February 2, 2006 @ 9:38:18.

[12] Minutes of the House Judiciary Committee for February 15, 2006 @ 2:34:08.

[13] See *Franzen v. State*, 573 P.2d 55, 57 (Alaska 1978), where the Alaska Supreme Court declared that it was unaware of any authority under Alaska law for a court to sentence a defendant to probation without imposing a corresponding suspended term of imprisonment. (The supreme court addressed this point *sua sponte*: the issue had not been raised by the parties.) See also *Figueroa v. State*, 689 P.2d 512, 514 (Alaska App. 1984), where this Court held that a suspended term of imprisonment is not a legally complete part of a criminal sentence unless it is accompanied by a period of probation.

(Our decision in *Figueroa* cites *Manderson v. State*, 655 P.2d 1320, 1324 (Alaska App. 1983), for the proposition that a period of probation is "meaningless" without an
(continued...)

It is true that, under Alaska law, probation is normally a counterpart to a suspended or partially suspended sentence. It is a contract between the court and the defendant: the defendant consents to be supervised and to live under the conditions imposed by the court in exchange for the court's agreement to suspend all or part of the defendant's term of imprisonment.[14] And because this probation is a contract (and because this contract allows a judge to control a defendant's life in ways that the defendant may deem more burdensome than normal criminal penalties), a defendant is free to refuse probation and to insist on a normal sentence.[15]

But in *State v. Auliye*, 57 P.3d 711 (Alaska App. 2002), this Court recognized the legislature's authority to create a different kind of "probation" — a period of non-custodial supervision that is mandatory rather than contractual, and which has no relationship to whether a portion of the defendant's sentence is suspended. *Id.* at 717.

The legislative history of AS 12.55.125(o) demonstrates that this is what the legislature had in mind when it created mandatory periods of probation for sex offenders. The legislature intended for all felony sex offenders to be actively supervised following their release from custody, and the legislature wanted to make sure that these offenders could not avoid this supervision by rejecting probation.

In this regard, we note that in 2007 (*i.e.*, the very next year after the legislature created this mandatory probation for sex offenders), the legislature took action to make sure that the conditions of this mandatory probation remained enforceable even

---

[13] (...continued)
accompanying term of suspended jail time. *See Figueroa*, 689 P.2d at 514. However, an examination of the text of *Manderson* shows that it was the defendant Manderson, and not this Court, who characterized probation without suspended jail time as "meaningless".)

[14] *State v. Auliye*, 57 P.3d 711, 717 (Alaska App. 2002).

[15] *Ibid.*; *Brown v. State*, 559 P.2d 107, 111 n. 13 (Alaska 1977).

if the defendant had already served their entire term of imprisonment — *i.e.*, even if there was no longer any suspended term of incarceration for the court to impose on the defendant. The legislature accomplished this goal by enacting AS 11.56.759, a statute that makes it a separate crime for a sex offender to violate the conditions of their probation in this situation.

We accordingly uphold the rulings of the superior court that the defendants in these cases must serve out their statutorily mandated periods of probation, even though the defendants have no further term of imprisonment remaining from their original sentences.

### *The other issues raised in this appeal*

The defendants argue that even if the superior court correctly ruled that they must serve the periods of probation mandated by AS 12.55.125(o), the superior court's authority is limited as to the types of probation conditions that can be imposed in connection with this mandatory probation — and that the superior court exceeded its authority with regard to some of the probation conditions imposed on the defendants. We conclude that we need not resolve these contentions, because the defendants can raise their arguments in the superior court.

Some of the defendants also argue that the superior court gave them insufficient notice of precisely which conditions of probation they would have to abide by. We agree that the defendants are entitled to fair notice of their conditions of probation, but again, the defendants should raise this problem with the superior court.

We also note that some of the probation conditions imposed on these defendants have been questioned or specifically disapproved by this Court in previous decisions. The defendants are free to raise these problems in the superior court.

Defendant Christopher Wasili raises a separate argument relating to AS 11.56.759, the statute that imposes criminal penalties on sex offenders who violate their probation when there is no further term of imprisonment remaining from their original sentence. Wasili argues that because his offense pre-dates the enactment of this statute, it would violate the *ex post facto* clause if he violated the conditions of his mandatory probation and the State then prosecuted him under this statute.

The State argues that this issue is not ripe, because the State has not alleged any violation of Wasili's conditions of probation, and there is no pending prosecution against Wasili under AS 11.56.759. We agree that the issue is not ripe.

*Conclusion*

The superior court's rulings that the defendants must serve the periods of probation mandated by AS 12.55.125(o) are AFFIRMED.