*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| EDWARD CHINUHUK, HERMAN MALUTIN, and CHRISTOPHER WASILI, | ) ) ) ) |
| | Supreme Court Nos. S-16993/17003/ 17004 (Consolidated) |
| | Court of Appeals Nos. A-11574/11600/ |
| Petitioners, | 11716 (Consolidated) |
| v. | Superior Court Nos. 3AN-09-09305 CR, 3AN-09-09927 CR, 4BE-06-00846 CR |
| STATE OF ALASKA, | |
| | O P I N I O N |
| Respondent. | |
| | No. 7482 – September 18, 2020 |

Petition for Hearing in File No. S-16993 from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge. Petition for Hearing in File No. S-17003 from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Michael Spaan, Judge. Petition for Hearing in File No. S-17004 from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Bethel, Michael Spaan, Judge.

Appearances: Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Petitioners. Timothy W. Terrell, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Respondent.

Before: Bolger, Chief Justice, Stowers, Maassen, and Carney, Justices. [Winfree, Justice, not participating.]

STOWERS, Justice.
CARNEY, Justice, dissenting.

## I.     INTRODUCTION

Petitioners are sex offenders who received prison sentences with some time suspended and probation imposed pursuant to a statute that mandated suspended imprisonment and probation as part of their initial sentences. The statute provided that the probationary term could not be suspended or reduced. After being released from prison, repeatedly violating the conditions of probation, and having all of their formerly suspended time reinstated, the petitioners moved for discharge from probation. Their motions were denied because the statute mandating probation required the petitioners to serve the entire probationary term, even if they no longer had suspended time remaining as an incentive to comply with probation.

While their cases were pending before the court of appeals, the statute was repealed. The court of appeals held the statute's repeal was not retroactive, and it affirmed the denial of their motions. We granted their petition for hearing.

We conclude based on the statute's text and legislative history that courts have no discretion to reduce a sex offender's probation below statutory minimums. We also conclude that the statute's repeal does not retroactively apply to the petitioners. We therefore affirm the court of appeals and deny the petitioners the relief they seek.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

This consolidated petition for hearing[1] concerns three sex offenders who were sentenced pursuant to former AS 12.55.125(o),[2] which was in effect from April 2006 to July 2016.[3] These three are among a larger group of sex offenders who sought to vacate their periods of probation, exchanging longer periods of incarceration for freedom from the supervision associated with probation. Each was denied the

---

[1]    The three petitioners — Edward Chinuhuk, Herman Malutin, and Christopher Wasili — were appellants in a consolidated appeal to the court of appeals. *Chinuhuk v. State*, 413 P.3d 1215, 1217 (Alaska App. 2018). They filed a consolidated petition for hearing to this court, which we granted. Two other appellants before the court of appeals, William Alexie and Ross Apangalook, *id.* at 1215, are not petitioners in the cases before this court.

[2]    Section .125(o), ch. 14, § 7, SLA 2006 (repealed 2016), added additional conditions to the sentences for sex offenders, whose punishment is defined by AS 12.55.125(i), as follows:

> Other than for convictions subject to a mandatory 99-year sentence, the court shall impose, in addition to an active term of imprisonment imposed under (i) of this section, a minimum period of . . . (2) suspended imprisonment of three years and a minimum period of probation supervision of 10 years for conviction of a class A or class B felony, or (3) suspended imprisonment of two years and a minimum period of probation supervision of five years for conviction of a class C felony. The period of probation is in addition to any sentence received under (i) of this section and may not be suspended or reduced. Upon a defendant's release from confinement in a correctional facility, the defendant is subject to this probation requirement and shall submit and comply with the terms and requirements of the probation.

[3]    *See* ch. 14, §§ 7, 15, SLA 2006 (enacting provision); ch. 36, §§ 179, 188, SLA 2016 (repealing provision).

opportunity to do so, and they challenge those rulings. Facts specific to each of the three petitioners follow.

### 1. Edward Chinuhuk

Edward Chinuhuk was convicted of attempted sexual abuse of a minor in the second degree, and in June 2010 he was sentenced to five years' imprisonment, with three years suspended, and placed on probation for five years. He repeatedly violated his probation conditions by "drinking and being re-arrested immediately upon release" and was made to serve portions of his previously suspended sentence. By his sixth violation in December 2012, he had served all but about eight months of his suspended sentence.

Chinuhuk and his probation officer agreed that he should serve this remaining time, and Chinuhuk requested that he thereafter be discharged from probation.[4] The State opposed, arguing that Chinuhuk could not reject his probation. It argued that his conviction for a sexual felony kept him subject to probation under former AS 12.55.125(o), asserting that "probation is a mandatory component" of sex offenders' sentences because the legislature mandated that sex offenders be monitored and treated after release. The superior court determined that because the length of probation was "specifically mandated by the legislature in AS 12.55.125(o)," it could not grant Chinuhuk's motion to reject probation. Chinuhuk was sentenced to the remainder of his suspended sentence and ordered to continue on probation upon his release.

---

   [4]    *See Brown v. State*, 559 P.2d 107, 111 n.13 (Alaska 1977) ("[U]nder Alaska's statutes governing probation the defendant can refuse probation if he deems the terms too onerous.").

### 2.    Herman Malutin

Herman Malutin was convicted of the same offense as Chinuhuk, and he was given the same sentence in August 2010. He also violated his probation repeatedly, although his non-compliance was more closely related to the underlying offense: he was residing with minor children, continuing to cultivate his apparent pedophilia, and failing to attend sex offender treatment. He and the State exchanged arguments similar to those described in Chinuhuk's case, and Malutin's motion to reject probation was similarly denied. Like Chinuhuk, he was ordered to serve his remaining suspended time and remained subject to probation after his release.

### 3.    Christopher Wasili

Christopher Wasili was charged with sexual assault in the second degree, and in June 2007 he was sentenced to seven years' imprisonment, with two years suspended, and placed on probation for five years. Wasili had four probation violations for failing to update his address information in the sex offender registry, failing to report to his probation officer, failing to obtain permission from his probation officer before changing his residence, and consuming alcohol. Like the other petitioners, Wasili's motion to reject probation was denied, and his remaining suspended time was imposed without relief from the balance of his probationary term.

### B.    Proceedings

All three offenders (collectively Chinuhuk) asked the court of appeals to reverse the denial of their motions and permit them to end their terms of probation; the

court consolidated their appeals.[5] While the cases were on appeal, the legislature enacted Senate Bill (S.B.) 91,[6] which repealed former AS 12.55.125(o).[7]

Chinuhuk's motion to reject probation was denied on the basis of section .125(o). Noting that section's repeal, Chinuhuk moved to have his appeal declared moot and his case remanded for entry of an order terminating his probation. The State opposed, arguing that Alaska's saving statute AS 01.10.100 precluded AS 12.55.125(o)'s repeal from affecting Chinuhuk.[8] Chinuhuk replied that AS 01.10.100 did not apply to him because the repeal of section .125(o) did not extinguish a penalty but instead restored a right: his right to refuse probation.

After the parties had filed their motion papers with the court of appeals, but before the court issued its decision, the legislature passed Senate Bill (S.B.) 54, which added AS 12.55.125(q).[9] As enacted in 2017 AS 12.55.125(q) substantially reinstated the language of AS 12.55.125(o) but with some variations.[10]

---

[5]     *Chinuhuk*, 413 P.3d at 1217.

[6]     *Id.*

[7]     Ch. 36, § 179, SLA 2016.

[8]     AS 01.10.100(a) provides in pertinent part: "The repeal or amendment of a law does not release or extinguish any penalty . . . incurred . . . unless the repealing or amending act so provides expressly. The law shall be treated as remaining in force for the purpose of sustaining any proper action . . . for the enforcement of the . . . penalty . . . ."

[9]     Ch. 1, § 34, 4SSLA 2017.

[10]     *Compare* ch. 1, § 34, 4SSLA 2017, *with* ch. 14, § 7, SLA 2006.

The court of appeals rejected Chinuhuk's argument that his appeal was rendered moot by S.B. 91.[11] In doing so, the court was influenced by the U.S. Supreme Court's decision in *Warden, Lewisburg Penitentiary v. Marrero*,[12] which dealt with an analogous claim involving changes to federal drug sentencing laws.[13] The Supreme Court concluded in *Marrero* that the defendant's sentence was a substantive component of his prosecution under the prior law, and — applying a similar saving statute[14] — it rejected the defendant's argument that he should benefit from recent statutory changes allowing drug offenders to apply for parole.[15] Following this example, the court of appeals concluded that Chinuhuk was not entitled to reject probation simply because of the repeal of AS 12.55.125(o); therefore S.B. 91 did not moot his appeal or direct its outcome in his favor.[16] The court of appeals did not acknowledge the passage of S.B. 54 in its issued opinion.[17]

---

[11]     *Chinuhuk*, 413 P.3d at 1217.

[12]     417 U.S. 653 (1974).

[13]     *Chinuhuk*, 413 P.3d at 1217.

[14]     *Marrero* involved consideration of 1 U.S.C. § 109 (1970), which states in pertinent part: "The repeal of any statute shall not . . . release or extinguish any penalty . . . incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action . . . for the enforcement of such penalty . . . ."

[15]     *Marrero*, 417 U.S. at 657-64.

[16]     *Chinuhuk*, 413 P.3d at 1218.

[17]     *See id.* at 1215-20.

On the merits, the court of appeals also sided with the State.[18] It acknowledged that probation is generally a contractual arrangement which the offender can reject.[19] But the legislature has the power to create mandatory probation, and the legislative history of section .125(o) convinced the court of appeals that the legislature had intended to exercise this power.[20] The court of appeals denied relief to Chinuhuk.[21]

Chinuhuk filed a petition for hearing, which we granted. While his case was on appeal before this court, the legislature amended AS 12.55.125(q) again as part of House Bill 49.[22] Effective July 2019 AS 12.55.125(q) now contains substantively identical language to former AS 12.55.125(o).[23]

## III. STANDARD OF REVIEW

"The interpretation of a statute . . . is a question of law to which we apply our independent judgment."[24] "[W]e interpret the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[25] "We do not mechanically apply the plain meaning rule, using instead a sliding scale approach to statutory interpretation, in which 'the

---

[18]     *Id.* at 1218-20.

[19]     *Id.* at 1219.

[20]     *Id.* at 1219-20.

[21]     *Id.* at 1220.

[22]     Ch. 4, § 74, FSSLA 2019.

[23]     *Compare id.*, *with* ch. 14, § 7, SLA 2006.

[24]     *State v. Fyfe*, 370 P.3d 1092, 1094 (Alaska 2016) (alteration in original) (quoting *Alaska Judicial Council v. Kruse*, 331 P.3d 375, 379 (Alaska 2014)).

[25]     *Id.* at 1095 (alteration in original) (quoting *State, Div. of Workers' Comp. v. Titan Enters., LLC*, 338 P.3d 316, 320 (Alaska 2014)).

plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.' "[26]

## IV.  DISCUSSION

We begin with a general discussion of probation as historically implemented in Alaska.  Next, we analyze the core issues presented in this case.  In our view this case presents two primary questions:  first, whether the trial court had discretion to revoke Chinuhuk's probation and second, whether section .125(o)'s repeal changes this analysis.

We employ a textual analysis and an examination of legislative history to conclude that the trial court had no discretion to modify the terms of Chinuhuk's probation.  We also conclude that the repeal of section .125(o) was not retroactive and thus did not reestablish Chinuhuk's right to refuse probation.

### A.    Probation Systems In Alaska

As both parties note, Alaska law usually permits a court to impose probation only in lieu of some other punishment.  Alaska Statute 12.55.080 authorizes a superior court to "suspend . . . the sentence or a portion thereof[] and place the defendant on probation . . . upon the terms and conditions [it] considers best."  In *Kelly v. State* the court of appeals described suspension as a necessary prerequisite to probation: "When a court sentences a defendant to serve a probationary period, the court must suspend a portion of the sentence or else the probationary term is meaningless."[27]  Alaska Statute 12.55.090(b) permits a court to "revoke or modify any condition of probation [or] change the period of probation."  The court of appeals held in *Kelly* that

---

[26]    *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 11 (Alaska 2014) (quoting *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 721 (Alaska 2013)).

[27]    842 P.2d 612, 613 (Alaska App. 1992).

if a superior court imposes the entirety of a probationer's suspended sentence following a probation violation, the court has no subsequent authority to impose probation.[28]

The parties agree about this principle, and it serves as the usual approach to probation in Alaska. They also agree that the legislature can abrogate this approach, as recognized in *State v. Auliye*.[29] In *Auliye*, the court of appeals analyzed the legislature's amendments to AS 04.16.050, a statute prohibiting underage drinking.[30] A now-repealed version of the statute[31] required that a convicted youth be placed on probation; the sentencing court had no discretion in this regard, and the youth "[could] not refuse probation."[32] The court of appeals distinguished the automatic, mandatory probation created by former AS 04.16.050 from Alaska's usual probation scheme.[33]

A central question in this case concerns whether section .125(o) abrogated the usual probationary rules as to sex offenders punished under section .125(i). Chinuhuk's core argument is that, in enacting AS 12.55.125(o), the legislature left the standard probation regime unchanged but for two departures:

---

[28]    *See id.* at 613-14 ("[The defendant] violated her probation and the court imposed all of the time it suspended. . . . Revocation of [her] probation in its entirety necessarily extinguished all duties [she] had that were conditioned exclusively on her probationary status.").

[29]    57 P.3d 711 (Alaska App. 2002).

[30]    *Id.* at 713-15.

[31]    The *Auliye* court analyzed AS 04.16.050 as amended in 2001. *Id.* at 715 n.14; *see* ch. 65, §§ 1, 2, SLA 2001. The probation provisions were repealed in 2016. *See* ch. 32, § 9, SLA 2016.

[32]    *Auliye*, 57 P.3d at 715-16.

[33]    *Id.* at 717.

> [Alaska Statute 12.55.125(o)] modifies sections .080 and .090 in two ways: First, a court no longer has the discretion to decide whether to impose a suspended sentence; rather, a court must impose a minimum period of suspended imprisonment when sentencing a defendant under AS 12.55.125(i). Second, in imposing a suspended sentence, a court no longer has the discretion to decide the length of the probationary period accompanying that sentence; rather, a court must impose a minimum period of probation supervision when sentencing a defendant under AS 12.55.125(i).
>
> Apart from these two modifications, [AS 12.55.125(o)] did not otherwise alter the statutory framework governing the imposition of probationary sentences.

Chinuhuk contends that the narrow effect of these changes, combined with a legislative record that is ambiguous on the point, is insufficient to conclude that the legislature intended to abrogate the usual probationary regime.

The State argues that the legislature instead created a third form of probation in AS 12.55.125(o). The State asserts that, unlike the usual scheme but like the mechanism described in *Auliye*, section .125(o) mandated a period of probation when sentencing a defendant under section .125(i). But unlike the probation described in *Auliye*, AS 12.55.125(o) also required suspended imprisonment to provide an incentive to comply with the terms of probation.

The core disagreement between the parties concerns what happens when the probationer has served the entirety of the suspended term but has not been on probation for the required amount of time. Chinuhuk argues that the usual rules govern. He asserts that courts have no authority to continue to impose probation in the absence of suspended imprisonment. The State maintains that even when a sex offender has served the suspended term in its entirety, probation "cannot be refused and . . . cannot be terminated early."

**B.    The Trial Court Had No Authority To Reduce The Terms Of Chinuhuk's Probation.**

**1.    Chinuhuk's probation imposed under section .125(o) was a mandatory part of his initial sentence.**

We begin with a textual analysis and then examine the legislative history of former AS 12.55.125(o). We conclude from the statute's text that Chinuhuk's initial sentence consisted of a period of imprisonment as outlined in AS 12.55.125(i) plus mandatory minimum probation as required by AS 12.55.125(o). A review of the legislative history corroborates this conclusion.

**a.    Textual analysis of section .125(o)**

The penultimate sentence of former AS 12.55.125(o) is key in this case: "The period of probation is in addition to any sentence received under (i) of this section and may not be suspended or reduced."[34]

We believe "reduced" refers to the "period of probation." This is the most natural reading of the sentence. The subject of the sentence is "[t]he period of probation." The sentence contains two verbs: "is" and "may." The period of probation "is in addition to any sentence received under [AS 12.55.125(i)]."[35] It also "may not be . . . reduced."[36]

The harder question concerns what the word "suspended" references. The sentence's grammatical structure supports the conclusion that "suspended" also refers to the "period of probation." But we find this reading hard to reconcile because it does not comport with common usage. A court typically does not "suspend probation."

---

[34]    Ch. 14, § 7, SLA 2006 (repealed 2016).

[35]    *Id.*

[36]    *Id.*

Rather, it suspends execution of a sentence. Determining that "suspend" refers to the execution of a sentence rather than the period of probation is also much more in line with common usage.[37]

But if we conclude "suspended" refers to execution of a sentence, we must harmonize that with our earlier conclusion that "reduced" refers to the period of probation. We struggle with how the verbs "suspended" and "reduced" can refer to two different subjects within the same sentence. We could conclude that the word "suspended" is superfluous. Perhaps the legislature simply meant that a trial court has no discretion to reduce the period of probation imposed under section .125(o), and "suspended" does not modify this interpretation in any meaningful way. But this conclusion does not comply with our strong preference to give every word in a statute some meaning.[38]

---

[37] The phrase "suspended probation" has never been used in any case in Alaska. A search of Alaska and related federal cases reveals 22 reported cases where these words have been used together. In 21 of those cases, the words were separated by a comma or a period, and "suspended" referred to the execution of the sentence, not probation. *See, e.g.*, *Garrett v. United States*, 471 U.S. 773, 779 n.1 (1985). In the one remaining case, the Ninth Circuit referred in passing to a non-party in the case as having been "sentenced to five months of suspended probation." *United States v. Capriola*, 537 F.2d 319, 320 (9th Cir. 1976). The best reading we can offer is that the court meant the non-party had the execution of his sentence suspended in exchange for five months of probation. In contrast, the phrase "suspended sentence" appears 189 times in reported Alaska cases and 282 times in related federal cases.

[38] *See Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 761 (Alaska 1999) ("We . . . presume 'that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous.' " (quoting *Rydwell v. Anchorage Sch. Dist.*, 864 P.2d 526, 530-31 (Alaska 1993))).

To solve this problem we are guided by the provision's placement within the section of the criminal procedure code dealing with sentencing.[39] Alaska Statute 12.55.125 generally concerns sentencing for felonies.[40] That the legislature chose to place former AS 12.55.125(o) within this section leads us to conclude that the legislature considered imprisonment and probation together to constitute a sex offender's initial sentence.[41] That is, a sex offender receives a "sentence" comprised of an incarceration period conforming to the guidelines contained in section .125(i) accompanied by the probation described in section .125(o).

Interpreting section .125(o) in this way also resolves our concern over the word "suspended" in this provision. The period of probation is a *mandatory* part of the sex offender's initial sentence. In other words, that part of the initial sentence "may not be suspended or reduced."[42] The directive that this part of the sentence "may not be suspended or reduced" is necessary because without it a court could conclude it could alter the terms of the mandatory probation prescribed by section .125(o) during initial sentencing, much as a court has discretion under the usual rules to set the terms of probation under AS 12.55.080.

---

[39] *See City of Kotzebue v. State, Dep't of Corr.*, 166 P.3d 37, 42 n.16 (Alaska 2007) (observing that statutory interpretation requires examination not only of the "particular language at issue but also . . . the 'language and design of the statute as a whole' " (quoting *Fed. Deposit Ins. Corp. v. Laidlaw Transit, Inc.*, 21 P.3d 344, 351 (Alaska 2001))).

[40] It is titled: "Sentences for imprisonment for felonies." AS 12.55.125.

[41] Had the legislature intended the probation imposed under section .125(o) to be more like normal probation, it could have, for example, included this provision with the statutes that concern probation instead of with those that deal with sentencing. *See, e.g.*, AS 12.55.080-.100.

[42] Ch. 14, § 7, SLA 2006 (repealed 2016).

### b. Legislative history analysis of section .125(o)

Our review of the legislative history supports this conclusion. Senator Gretchen Guess testified during the Senate Judiciary Committee hearing on Senate Bill (S.B.) 218 about the importance of subjecting sex offenders on probation to mandatory polygraph tests:

> [Alaska Statute 12.55.125(o)] is, I think, a very important part of this bill. Because what it does is ensure that anyone, when they do get off, is on automatic probation and therefore can be polygraphed. And it's one of the ways that we can actually protect the public and keep sex offenders who've gotten out of jail, if they get off, we don't need to go back to trial — they're on probation for a certain amount of time.[43]

In later testimony before the House Judiciary Committee, Senator Con Bunde described how mandatory probation and the polygraph requirement also provide an important deterrent for repeat offenders:

> [T]his allows for mandatory probation as part of a regular sentencing. . . . Rather than take an early out and be under parole or probation, rather than be under any supervision, [some sex offenders will instead choose to] do their full sentence in an attempt then to not be under supervision. And again, this leads to the recidivism problem that we're concerned about. . . . This is mandatory probation, cannot be suspended or reduced, and the defendant is subject to all the rules of probation under this requirement — which, when this bill passes, would include the polygraph test.[44]

The then-current phenomenon of sex offenders choosing to serve their entire prison term

---

[43] Testimony of Sen. Gretchen Guess at 9:58:45-9:59:15, Hearing on S.B. 218 Before the S. Judiciary Comm., 24th Leg., 2d Sess. (Jan. 19, 2006).

[44] Testimony of Sen. Con Bunde at 2:39:47-2:40:47, Hearing on H.B. 353 Before the H. Judiciary Comm., 24th Leg., 2d Sess. (Feb. 15, 2006).

without probation "[led] to the recidivism problem" that the legislature was addressing.[45] The legislature's cure was a special kind of probation: it had to be imposed, and it could not be suspended or reduced.[46]

Chinuhuk concedes this testimony could support our interpretation. But he notes that the testimony concerns a version of the bill that lacked mandatory suspended sentences. He suggests that subsequent amendments to S.B. 218 in March 2006 change this analysis. The legislature amended the bill after Senator Bunde's testimony to couple suspended imprisonment with probation.[47] Chinuhuk offers this as proof that the legislature did not intend to depart from the usual scheme provided for in AS 12.55.080. The State counters that the legislature inserted suspended imprisonment into later versions of S.B. 218 "to make the probation more effective as a practical matter," not to make it identical to probation imposed under section .080. Deputy Attorney General Susan Parkes testified before the House Finance Committee and provided the best explanation we have found regarding the purpose of these changes:

> The original bill mandated that there be probation for sex offenses. Well, probation only has teeth if there's suspended

---

[45]     *See id.*

[46]     *See* ch. 14, § 7, SLA 2006 (repealed 2016). The dissent characterizes the probation imposed under AS 12.55.125(o) as "meaningless" under the theory that without suspended imprisonment to serve as an incentive to comply with probation, the probation would have no purpose. But the dissent ignores the crucial fact that the legislature intended probation, and the new polygraph test requirement, to be *mandatory* for sex offenders. If sex offenders could treat their probation as optional, they could also circumvent the polygraph test requirement. Such an outcome would run counter to legislative intent.

[47]     *Compare* Committee Substitute for Senate Bill 218 (FIN), § 7, 24th Leg., 2d Sess. (Feb. 9, 2016), *with* House Committee Substitute for Committee Substitute for Senate Bill 218 (FIN), § 7, 24th Leg., 2d Sess. (Apr. 5, 2006).

time required so that if someone violates probation there's an ability to punish them. And so, section eight now mandates that there be suspended time so that every sex offender, unless they're getting the mandatory 99 years, this would require a certain amount of suspended time so that that mandatory probation actually has some teeth in it.[48]

Clearly the legislature contemplated imposition of portions of suspended imprisonment for probation violations. We decline to take this as far as Chinuhuk does, however, and equate this with an intent to fully embrace probation under section .080. Park's testimony suggests a continued emphasis on the importance of the mandatory probation. And it supports the State's argument that the legislature coupled suspended imprisonment with mandatory probation "to make the probation more effective as a practical matter."

### 2. The trial court had no discretion to reduce Chinuhuk's probation at a subsequent hearing.

We have concluded from the statute's text and legislative history that the legislature intended a sex offender's initial sentence to have two components: a period of imprisonment and a period of mandatory probation after the sex offender leaves prison. The legislature required some suspended time to act as an incentive for sex offenders to comply with the terms of probation, and it contemplated that courts would impose some portion or all of the suspended time for probation violations. We next answer whether a court may modify the term of probation after initial sentencing when it imposes some portion of the suspended imprisonment.

We conclude that a trial court has no discretion to reduce a sex offender's probation term below statutory minimums. The statute requires minimum terms of

---

[48] Testimony of Susan Parkes, Deputy Att'y Gen. at 1:50:52-1:51:24, Hearing on S.B. 218 Before H. Fin. Comm., 24th Leg., 2d Sess. (Mar. 7, 2006).

probation and states unequivocally that the sentence prescribed by AS 12.55.125 "may not be suspended or reduced."[49] Because the trial court sentenced Chinuhuk to the statutory minimum period of probation defined in AS 12.55.125(o), it had no discretion to reduce his probation at a subsequent hearing.

We also believe that any other interpretation of the statute would run counter to legislative intent. During initial sentencing the trial court must prescribe at least the minimum period of probation outlined in section .125(o). But under Chinuhuk's suggested interpretation, trial court discretion at subsequent hearings would be governed by sections .090 and .110; section .125(o) would no longer control. Thus, Chinuhuk argues, the trial court regains its discretion to set aside all of a sex offender's probation after he leaves prison.

But such a conclusion would lead to an absurd result. To understand why, we may consider the case of the sex offender who violates probation the day after leaving prison. Chinuhuk does not explain why the legislature would cabin court discretion at initial sentencing only to allow such discretion immediately after the sex offender leaves prison. Chinuhuk's suggested interpretation would allow sex offenders to effectively forgo the mandatory probation and polygraph requirement that the legislature intended. Immediately after leaving prison the sex offender could violate the terms of probation and ask the court to exercise its newfound discretion to set aside his probation. Probation that the legislature mandated last for minimum periods of 5, 10, or 15 years[50] could be reduced to months, weeks, or even a day. We decline to adopt an interpretation that

---

[49]     Ch. 14, § 7, SLA 2006 (repealed 2016).

[50]     *Id.*

would leave such a glaring loophole in the law because we do not believe the legislature so intended.[51]

## C. Section .125(o)'s Repeal Did Not Restore Chinuhuk's Right To Refuse Probation.

Finally, we consider the extent to which the repeal of section .125(o) affects the outcome in Chinuhuk's case. We conclude that Alaska's saving statute AS 01.10.100 denies the retroactive application of section .125(o)'s repeal. We also do not give weight to Chinuhuk's argument that even if section .125(o)'s repeal was not retroactive as to him, he should have received the benefit of its repeal at subsequent probation revocation hearings.

### 1. S.B. 91's repeal of AS 12.55.125(o) was not retroactive.

The parties offer several ways to analyze the effect of S.B. 91's repeal of section .125(o). The State argues — and the court of appeals held[52] — that Alaska's general saving statute bars section .125(o)'s repeal from having retroactive effect. The saving statute prevents elimination of penalties or rights under repealed statutes when those penalties attached or rights vested previously.[53] Because Chinuhuk was placed on probation as part of the "penalty" he incurred under section .125(o), the State argues the later repeal of that statute did not "extinguish [the] penalty."[54]

---

[51] *See Brooks Range Expl. Co. v. Gordon*, 46 P.3d 942, 945-46 (Alaska 2002) ("[W]here the literal interpretation of a statute would lead to absurd results, courts can interpret the words of the statute to agree with the intention of the legislature." (citing *Sherman v. Holiday Constr. Co.*, 435 P.2d 16, 18-19 (Alaska 1967))).

[52] *Chinuhuk v. State*, 413 P.3d 1215, 1217-18 (Alaska App. 2018).

[53] AS 01.10.100(a).

[54] *See id.*

Several factors support the State's argument. The court of appeals has held that criminal "penalties are imposed at the time of sentencing";[55] this, combined with the fact that Chinuhuk was placed on probation pursuant to section .125(o) as part of initial sentencing, erases any doubt that his term of probation was a "penalty" that the saving statute prevents from being "extinguished" by section .125(o)'s repeal. The U.S. Supreme Court's decision in *Marrero* provides analogous support: just as the defendant in that case was denied the benefits of post-sentencing revisions to the federal parole regime because that would have violated the relevant saving statute as to his penalty, so too is Chinuhuk unable to benefit from the repeal of section .125(o) after he was sentenced.[56]

Chinuhuk contends that Alaska's saving statute is narrower than it appears and was adopted solely to deal with the issue of abatement. As Chinuhuk explains, saving statutes were designed to address the interplay between the common law doctrine of abatement and the constitutional bar to ex post facto legislation. Under the doctrine of abatement a legislature that amends a statute repeals the older version, and pending or potential prosecutions under the former law must be extinguished.[57] Because a new prosecution cannot begin under the new statute based on pre-enactment conduct due to

---

[55]     *Helton v. State*, 778 P.2d 1156, 1169 (Alaska App. 1989).

[56]     *See Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 660-64 (1974).

[57]     *See United States v. Tynen*, 78 U.S. 88, 93 (1870) ("When repugnant provisions . . . exist between two acts, the latter act is held, according to all the authorities to operate as a repeal of the first act, for the latter act expresses the will of the government as to the manner in which the offences shall be subsequently treated."); *id.* at 95 ("By the repeal of . . . the act . . . all criminal proceedings taken under it fell.").

the bar on ex post facto legislation,[58] some offenders can escape justice. Chinuhuk contends that saving statutes such as Alaska's are designed solely to address this technical issue. He claims that because laws that ameliorate penalties do not implicate ex post facto concerns,[59] the saving statute does not prohibit their retroactive application.

We disagree that the Alaska saving statute is limited to situations where the repeal of a statute would have abated a prosecution at common law. The language of AS 01.10.100 is clear. It states that a law's repeal or amendment "does not release or extinguish any penalty . . . incurred . . . under that law."[60] After repeal or amendment "[t]he law shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of the . . . penalty."[61] Nothing in this language implies that the saving statute only applies to situations where prosecutions would otherwise be barred by operation of common law abatement and the prohibition against

---

[58]     *See Doe v. State*, 189 P.3d 999, 1003 (Alaska 2008) ("An ex post facto law is a law 'passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed.' These constitutional prohibitions bar the legislature from enacting any law that 'punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission; or which deprives one charged with a crime of any defense available according to law at the time when the act was committed.' " (footnote omitted) (first quoting *In re Estate of Blodgett*, 147 P.3d 702, 711 (Alaska 2006); then quoting *State v. Anthony*, 816 P.2d 1377, 1378 (Alaska 1991))).

[59]     *Cf. Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (holding that the ex post facto clause bars legislation that makes punishment more burdensome after its commission); *Doe*, 189 P.3d at 1003 (holding the same).

[60]     AS 01.10.100(a).

[61]     *Id.*

ex post facto legislation. Indeed, our holding here is consistent with how courts in other jurisdictions have interpreted similarly worded saving statutes.[62]

### 2. Chinuhuk's argument that he is "sentenced" anew each time he is returned to probation is unpersuasive.

Chinuhuk offers an alternative theory for relief. He asserts that "when he appears before the court on a petition to revoke his probation, that is a new sentencing proceeding, at which he may take advantage of ameliorative sentencing provisions currently in effect." Chinuhuk cites our decision in *Gilligan v. State*[63] for the proposition that the punitive effects of a probation revocation proceeding constitute a "sentencing." In that case, we determined that we had jurisdiction to hear an offender's appeal after he violated the conditions of probation and his suspended sentence was reimposed.[64] In so holding, we stated that the imposition of a suspended sentence "was a 'sentence of imprisonment lawfully imposed' within the meaning of the statutes providing for sentence review."[65]

In *State v. Stafford* the court of appeals declared that Alaska's case law trends toward "applying ameliorative sentencing provisions to defendants not yet

---

[62]     *See, e.g.*, *United States v. Bradley*, 455 F.2d 1181, 1191 (1st Cir. 1972), *aff'd sub nom. Bradley v. United States*, 410 U.S. 605 (1973) ("We do not agree that [the federal saving statute] is limited to those statutes the repeal of which, at common law, would have abated a cause of action or prosecution."); *United States v. Kirby*, 176 F.2d 101, 104 (2d Cir. 1949) (relying on plain language of federal saving statute without considering doctrine of abatement to conclude that repealed sentencing statute remained in effect).

[63]     560 P.2d 17 (Alaska 1977).

[64]     *Id.* at 18.

[65]     *Id.* at 19 (quoting AS 12.55.120(a) and AS 22.05.010(b)).

sentenced."[66] Therefore, if we adopt the premise that Chinuhuk was "sentenced" each time his probation was revoked, then *Stafford* could direct the superior court to treat section .125(o) as repealed when adjudicating Chinuhuk's suspended imprisonment and probation at subsequent proceedings. The effect would be to return Chinuhuk to the ambit of the default probation regime and allow him to reject his remaining probation.

We find Chinuhuk's reliance on *Gilligan* unpersuasive. In *Gilligan* we were concerned with the procedural aspects of appellate jurisdiction and judicial review.[67] This case deals with the substantive aspects of the saving statute. We considered in *Gilligan* the scope of former Alaska Appellate Rule 21(b), which required appeals to be filed within "30 days after [the] sentence was imposed."[68] Gilligan's appeal of his probation revocation was filed more than 30 days after his initial sentence.[69] The State argued the "sentence" referred to in Rule 21(b) was the offender's initial sentence and that we therefore did not have jurisdiction to hear his appeal under Rule 21(b).[70] Had we ruled in favor of the State we would have likely eliminated judicial review of almost all judgments reinstating imprisonment at probation revocation hearings. We

---

[66]     129 P.3d 927, 930 (Alaska App. 2006).

[67]     *See generally* 560 P.2d 17.

[68]     The Appellate Rules have since been restyled. At the time, Rule 21(b) provided: "(b) Notice of Appeal. Written notice of appeal from a sentence . . . shall be filed with the clerk of the superior court which imposed the sentence not later than 30 days after sentence was imposed." *Id.* at 18 n.1.

[69]     *Id.* at 18.

[70]     *Id.*

therefore construed the meaning of "sentence" in the context of Rule 21(b) more broadly to include re-sentencing at a probation revocation hearing.[71]

As a preliminary matter, we note the Appellate Rules have been significantly restyled since *Gilligan*, and the rules now couch appellate review in terms of final "judgment," not based on when a "sentence" is imposed.[72] The issue of what constitutes a "sentence" therefore would not arise today under the facts of *Gilligan*. Moreover, we expressly limited our interpretation of "sentence" in that case to be "within the meaning of the statutes providing for sentence review."[73] We see no need therefore to extend our interpretation of the word "sentence" in the context of a now-rewritten appellate rule governing jurisdiction to situations not before us in *Gilligan*.

We may also distinguish this case from the facts in *Stafford*. In *Stafford* the court of appeals considered whether the "penalty" saved by AS 01.10.100 accrued as of a defendant's commission of the offense or as of sentencing.[74] After conducting an exhaustive review of our prior decisions, the court of appeals concluded the key date was the date of sentencing.[75] In the consolidated cases before the court in *Stafford*, however, none of the defendants had been sentenced at all when the new statute was passed.[76] In deciding that ameliorative sentencing provisions should apply to the defendants in that

---

[71]     *Id.* at 19.

[72]     *See* Alaska R. App. P. 202 (stating that appeals may be taken from final judgments), 204(a)(1) (requiring notice of appeal to "be filed within 30 days from the date shown in the clerk's certificate of distribution on the judgment appealed from").

[73]     *Gilligan*, 560 P.2d at 19.

[74]     129 P.3d 927, 928-33 (Alaska App. 2006).

[75]     *Id.* at 929-33.

[76]     *Id.* at 928.

case, the *Stafford* court did not consider whether the rule should extend to sentence modifications at probation revocation hearings.[77] We conclude that the *Stafford* rule does not apply to those situations. To do otherwise would run counter to the purpose of Alaska's saving statute.

## V.    CONCLUSION

We AFFIRM the court of appeals on all grounds. Chinuhuk, Malutin, and Wasili remain subject to mandatory probation imposed under former AS 12.55.125(o) to the extent they have remaining probation to serve.

---

[77]    *See id.* at 927-34.

CARNEY, Justice, dissenting.

I respectfully disagree with the court's decision that the legislature created a type of probation that is "meaningless"[1] and continues even after the imposition of all of the suspended time upon which its meaning depended.[2] Instead I believe that the legislature identified a problem: dangerous sexual offenders were being released from prison too soon and without the benefit of treatment designed to reduce the chance that they would commit new offenses. I believe further that the legislature crafted a solution to that problem: it increased the mandatory sentences for sexual felony offenses and required, as a part of the increased sentences, mandatory periods of probation.

In lengthy and at times confusing committee meetings,[3] the legislature considered and amended legislation that ultimately included the sentence on which so much attention now focuses: the "penultimate sentence of former AS 12.55.125(o)."[4]

---

[1] *See Kelly v. State*, 842 P.2d 612, 613 (Alaska App. 1992) ("When a court sentences a defendant to serve a probationary period, the court must suspend a portion of the sentence or else the probationary term is meaningless."); *see also Planned Parenthood of Alaska v. Campbell*, 232 P.3d 725, 735 (Alaska 2010) (Winfree, J., concurring in part and dissenting in part) ("Any purported regulation of conduct must include consequences, otherwise it is meaningless . . . .").

[2] Opinion at 9-10.

[3] For example, a legislator requested that a Department of Corrections official clarify the practice of "flat-lining" sentences to avoid a parole requirement to submit to polygraph examinations. *See* Testimony of Sen. Con Bunde at 9:38:18-9:38:37, Hearing on S.B. 218 Before the S. Fin. Comm., 24th Leg., 2d Sess. (Feb. 2, 2006). In response the official clarified both what "flat-*timing*" was and discussed "mandatory parole" — a component of felony sentences entirely distinct from probation. *See* Testimony of Portia Parker, Deputy Commissioner, Dep't of Corr. at 9:38:39-9:39:59, Hearing on S.B. 218 Before the S. Fin. Comm., 24th Leg., 2d Sess. (Feb. 2, 2006).

[4] Opinion at 12.

I share the court's impression that this sentence could have been more artfully worded.[5] But I cannot join in its pages of "reconcil[ing]" the sentence's meaning in a way that "does not comport with common usage"[6] of English to create a type of probation that Alaska's courts, including this one, have recognized as "meaningless" for decades.[7] Instead, I believe that we should understand the legislature's intent in a way that is consistent with its overall solution to the problem it was addressing and consistent with the "common usage" of language and, in particular, the specialized language of Alaska's criminal justice system.

As the court notes, the legislature aimed to address "the recidivism problem" caused by sex offenders choosing to serve prison time without probation following their release.[8] The legislature used a two-pronged approach: first it increased the mandatory sentences for each sexual felony.[9] Then, following a senator's suggestion that mandatory probation be included in the newly increased sentences,[10] it amended the proposed legislation to require just that, but neglected to require that the sentences

---

[5]     Opinion at 12-14.

[6]     Opinion at 12.

[7]     *See Kelly v. State*, 842 P.2d 612, 613 (Alaska App. 1992).

[8]     Opinion at 15-16 (quoting Testimony of Sen. Con Bunde at 2:39:47-2:40:47, Hearing on H.B. 353 Before the H. Judiciary Comm., 24th Leg., 2d Sess. (Feb. 15, 2006)).

[9]     Committee Substitute for Senate Bill (C.S.S.B.) 218, § 4, 24th Leg., 2d Sess. (2006).

[10]     Testimony of Sen. Con Bunde at 2:39:47-2:40:47, Hearing on H.B. 353 Before the H. Judiciary Comm., 24th Leg., 2d Sess. (Feb. 15, 2006).

include suspended time.[11] The legislature added an additional requirement of suspended time after testimony from the deputy attorney general in charge of criminal matters explained that "probation only has teeth if there's suspended time so that if someone violates probation there's an ability to punish them."[12] The legislation was amended to "now mandate[] that there be . . . a certain amount of suspended time so that . . . mandatory probation actually has some teeth in it."[13]

The legislative changes to sentences for sexual felonies were dramatic. Where previously an offender convicted of sexual assault in the first degree was subject to a presumptive sentencing range of 8 to 12 years,[14] with probation and suspended time left to the discretion of the sentencing court, following the amendments the same offender faced a minimum range of 20 to 30 years[15] and, due to the newly added AS 12.55.125(o), a mandatory probationary period of 15 years, with 5 years suspended during that time.[16] By spelling out these requirements, section .125(o) prohibited sentencing courts from sentencing an offender to even a lengthy prison term without

---

[11]     C.S.S.B. 218, § 7, 24th Leg., 2d Sess. (2006).

[12]     Testimony of Susan Parkes, Deputy Att'y Gen. at 1:50:52-1:51:07, Hearing on S.B. 218 Before H. Fin. Comm., 24th Leg., 2d Sess. (Mar. 7, 2006); House Committee Substitute for Committee Substitute for Senate Bill 218, § 7, 24th Leg., 2d Sess. (2006).

[13]     *Id.* at 1:51:09-1:51:24.

[14]     Ch. 2, § 12, SLA 2005.

[15]     Ch. 14, § 4, SLA 2006.

[16]     Ch. 14, § 7, SLA 2006 (repealed 2016).

probation;[17] suspending a portion of the mandatory minimum sentence in order to place the offender on probation;[18] or reducing the mandatory probationary period even after service of a lengthy prison term.[19]

Section .125(o) makes clear the legislature's requirement that any sentence imposed under the new sentencing scheme was required to include a mandatory minimum period of probation, along with a mandatory minimum number of years of suspended imprisonment for that probationary period. Section .125(o) was necessary to ensure that sentencing courts did not exercise their discretion in a manner that perpetuated the problem the legislature sought to remedy. The amended statutes thus addressed both of the legislature's concerns: sex offenders received notably longer prison sentences and after completing them were required to abide by probation conditions, including sex offender treatment, for a lengthy probationary period. If offenders did not comply with the conditions of their probation, they would be returned to prison to serve the additional years that had been suspended.

The legislature's amendment of laws governing sentencing in felony sexual offenses thus significantly increased the punishment for such offenders and required probation, including treatment, as part of their sentences. But the amendments did not create an unprecedented new version of probation. Nor did the amendments attempt to

---

[17]     For example, a court could no longer sentence an offender to 40 years — well above the minimum sentencing range — but decline to suspend at least 5 years of the time in order to place the offender on probation.

[18]     A court could no longer, for example, sentence a defendant to the minimum 20 years and suspend 5 of those 20 years; instead the court was required to impose at least 25 years before suspending the mandatory minimum 5.

[19]     Nor could a court take into account an offender's projected advanced age upon release from service of a lengthy sentence by concluding that a lengthy probationary period would not be necessary and reducing the mandated period.

craft any kind of new enforcement mechanism to keep such an unprecedented creation from being "meaningless."

The court recognizes that probation requires suspended time in order to serve as the double-edged incentive and deterrent it was intended to be.[20] Probation provides an incentive to an offender — compliance with probation conditions means that the offender will never have to serve the additional years in prison that were suspended. And it is intended to deter violations of probation by suspending the spectre of additional prison time as a consequence of violation.

Each of the appellants felt probation's intended deterrent effect; each of them ultimately served every day of the suspended portion of their prison sentence after violating probation. And each of them — along with their supervising Department of Corrections probation officers — asked that they be released from probation after serving all of the time to which they had been originally sentenced.

The court acknowledges that each of them served their entire sentence.[21] But instead of adhering to long-established precedent barring courts from adding additional probation to an offender's sentence[22] it nonetheless decides that appellants remain subject to a special kind of probation and turns for support to the unique (and

---

[20] Opinion at 9-10.

[21] Opinion at 4-5.

[22] *See, e.g.*, *Franzen v. State*, 573 P.2d 55, 57 (Alaska 1978) (recognizing "no authority under Alaska law which permits the court to impose a fixed sentence, require the defendant to serve that sentence, and then place the defendant on an additional period of probation").

now only historical) probation once imposed on youthful offenders convicted of underage alcohol offenses.[23]

In *State v. Auliye* the court of appeals granted the State's petition for review of a superior court's decision that a youth charged with possession or consumption of alcohol was entitled to a jury trial.[24] The court held that because probation until the youth's 21st birthday was "automatic," sentencing judges were "empowered to impose penalties on these youths that are sufficiently severe to trigger the rights to jury trial and court-appointed counsel."[25] In dicta before moving to its analysis of youths' entitlement to these rights, the court remarked that it was "at least arguable that" a court could forbid even first offenders from operating a motor vehicle until they turned 21.[26] It is upon this comment by the court of appeals that the court today rests its approval of "meaningless" probation.[27]

Even assuming that a comment in a court of appeals opinion apparently approving a now-discontinued form of probation for minors convicted of possession or consumption of alcohol supports the idea that probation need not include suspended time, it is not clear to me that the legislature intended to create such a type of probation for sexual offenders. For one, by virtue of her youth, and the statute's command that she "may not refuse probation,"[28] Auliye "at least arguably" faced a consequence for

---

[23] Opinion at 10-11.

[24] 57 P.3d 711, 712 (Alaska App. 2002).

[25] *Id.* at 717.

[26] *Id.*

[27] *See* Opinion at 9-11.

[28] 57 P.3d at 715 (quoting former AS 04.16.050(e) (2001)).

violating probation, even if her sentence was not imposed.[29] But appellants do not face an additional consequence if they violate probation; they have served the entirety of the time imposed upon them in sentencing. No purpose is served by continuing their "meaningless" probation.

A second difference between *Auliye* and appellants' position is that the legislature appeared to have purposefully crafted the unique probationary scheme imposed on the juvenile offender. The court of appeals detailed the evolving legislation that resulted in the unique "modified strategy" of automatic probation.[30] The legislative history of AS 12.55.125(o) lacks any such intentional progress toward a probationary scheme for sexual offenders resulting in "meaningless" probation. Instead, the ambiguous statutory language and legislative history reflect legislative confusion leading to an inartfully drafted statute.

What the legislative history *does* reveal is the legislature's intent to craft a probationary scheme to address the problem of untreated sex offenders being released after serving relatively short sentences. The increased length of appellants' sentences and the requirement of sex offender treatment as a probation condition demonstrate that solution. Having served their entire sentences — the originally imposed prison time plus the previously suspended time — appellants faced neither an incentive nor a deterrent during any continued probation. Recognizing that continued probation was therefore "meaningless," they and their probation officers requested that they be released from probation. Their requests should have been granted.

---

[29] *See id.*

[30] *See id.* at 713-16.

I therefore dissent from the court's decision.[31]

---

[31] Because I would reverse the court of appeals decision, I do not reach the other arguments on appeal.